PRICE ROMJUE et al., Defendants in Error, v. OLLIE RANDOLPH et al., Plaintiffs in Error.

Kansas City Court of Appeals, April 29, 1912.

1. WILLS: Life Estate: Power of Disposal: Enlargement to Fee. If property is by will given to another for life, though with full power of sale in the devisee, the estate is one for life only, and the authority to sell is but a power; the rule being that if a life estate is clearly given, it is not enlarged to a fee by subsequent power of disposal.

2. ———: Devise Generally: Power of Sale: Remainder. If property is by will given to another generally, with full power of disposal, the devisee takes an estate in fee, and an attempted limitation of a remainder to a third person is void.

But if the property is not given generally to the first taker, but specifically for his life, then a power of sale will not enlarge the life estate into a fee.

3. ——: ——: Husband and Wife: Joint Will: Survivor. A husband and wife, without children of their own, made a joint will containing the following clause: "We each will, bequeath and devise, to the other surviving all the property, real, personal or mixed, of which we or either of us shall die seized, with full power of disposition for and during the life of such survivor." And by a subsequent clause they willed the remainder of their estates to three persons, in equal parts, or their descendants. The husband died first and it was held that the wife took a life estate. And that each gave a life estate to the survivor, and both gave the remainder to the three persons.

4. ——: ——: ——: Lapse: General Estate. A husband and wife, without children of their own, made a joint will, whereby they each gave a life estate to the survivor and the remainder to three persons in equal parts, or their descendants. The husband died; and afterwards one of the three devisees died without issue, and then the wife died. It was held, that the devise to the deceased devisee lapsed, since he did not leave descendants. His share of the estate would remain as general estate of the two testators and would go to their statutory heirs in the proportion of the original estate of each of them.

5. ——: ——: ——: Descendants. The word "descendants" is held not to mean collateral kin, such as brothers and sisters, but direct issue from the body, including grandchildren to the remotest degree.

Error to Macon Circuit Court.—*Hon. Nat. M. Shelton, Judge.*

REVERSED AND REMANDED.

*R. L. Matthews* and *John T. Barker* for plaintiffs in error.

*Dan R. Hughes* and *John R. Hughes* for defendants in error.

ELLISON, J.—James A. Lea and Nancy Lea were husband and wife without issue of their own, but they had raised to manhood and womanhood three children,

Nancy May, Ollie Greer and Albert Lea. They made the following will:

"2. We each will, bequeath and devise, to the other surviving all the property, real, personal or mixed, or which we or either of us shall die seized, with full power of disposition, for and during the life of such survivor.

"3. We each will, bequeath and devise all the rest, residue and remainder of all the property, real, personal and mixed, remaining undisposed of at the death of the survivor, in this will jointly made by us, to the beloved children, hereinafter named, whom we reared as follows: To Nancy May, . . . to Albert Lea, . . . to Ollie Greer; to be equally divided between them and their descendants, to the exclusion of our next of kin, under the laws of descent and distribution, in the absence of any children being born of our union, and we now state that at the making of this will no children having been so born."

James, the husband, died and subsequently the young man Albert died without issue; then, afterwards, Nancy, the surviving wife, died, and there was thus left only Nancy May and Ollie Greer. Nancy left collateral kin only and Albert left brothers and sisters. The question for decision is, who takes the one-third interest in the property originally devised to Albert. The collateral kin of Nancy claim it as coming to them through her; the brothers and sisters of Albert claim it as coming through him, and Nancy May and Ollie Greer claim it as surviving joint tenants.

The trial court decided that Nancy took an absolute estate and that the devise to Albert lapsed by reason of his death prior to Nancy's decease.

If the second clause of the will was an absolute devise to Nancy, then the last part of that clause, seemingly limiting the estate to one for life, would be void. For, "It is a settled rule or American as well

as English law that when the first devisee has the absolute right to dispose of the property in his own unlimited discretion and not a mere power of appointment among certain specified persons or classes, any estate over is void, as being inconsistent with the first gift." And, "If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A in fee, and if he dies possessed of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should leave, or without selling or devising the same; in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate or power of disposition expressly given or necessarily implied by the will." [Jackson v. Littell, 213 Mo. 589.]

It is said that "A power to dispose of a thing as one pleases, must necessarily carry along with it a full property in it." [Ibid.] The same rules are stated in Gannon v. Albright, 183 Mo. 238. A devise of an estate generally or indefinitely, with power to dispose of the same, vests the fee simple in the devisee, and no subsequent ambiguous limitation will lessen the estate. [Cook v. Couch, 100 Mo. 29; Small v. Field, 102 Mo. 104; Roth v. Rauschenbusch, 173 Mo. 582.]

So in Jackson v. Robins, 16 Johns. 537, 587, 588, where the testator devised "all my real and person estate whatsoever unto my dear wife Sarah, to hold the same to her, her executors, administrators and assigns, but in case of her death without giving, devising or bequeathing by will or otherwise selling or assigning the said estate, or any part thereof, then I do give, devise and bequeath, all such estate or all parts thereof as shall so remain unsold, undevised or unbequeathed, to my daughter," it was held that the first part of the clause gave a fee to the wife and the remainder over

to the daughter was void. It being said that the power and right to sell was itself "an attribute of ownership and carries with it a fee;" and that it was "an incontrovertible rule that where an estate is given to a person generally or indefinitely with a power of disposition, it carries a fee."

But the power of absolute disposal over property will not operate as the devise of a fee in realty, or absolute title in personalty, where a life estate only is devised. [Grace v. Perry, 197 Mo. 550; Tisdale v. Prather, 210 Mo. 402.] In such case the life estate is not enlarged by unrestrained power of sale, but such power is merely one of appointment, which, if not exercised, leaves the estate in remainder. It is proper enough to say that a devise of an estate generally, with power of absolute sale, passes the fee. But the devise of an estate for life is not a general devise, or, as otherwise expressed, is not a "gift generally or indefinitely." Its duration is limited to a life by its own terms. Thus, in Rubey v. Barnett, 12 Mo. 3, after recognition of the rule in accord with the authorities above cited, it is said: "But a devise to a wife for life, and after her decease she to give the same to whom she will, passes but an estate for life with a power; yet if an express estate for life had not been devised to the wife, an estate in fee would have passed by the other words."

"This," says the court, "is the distinction which prevails throughout the cases. When an express estate for life is given, and afterwards a power of disposition is conferred, then the devisee takes but a life estate with a power of disposition, and if no disposition is made, the reversion will go to the heirs of the devisor. But if there is no previous devise of a life estate, but a simple power of disposition is bestowed, then the devisee takes an absolute estate."

The rule thus stated by Judge Scott more than sixty years ago, is sound today, because it rests upon

the plain duty of the courts to administer the intention of the testator when not contrary to general law.

That the absolute power of disposal is a gift of the absolute property is the dictate of common sense, says Judge Tucker, in Burwell v. Anderson, 3 Leigh, 348. And further, that: "He who has the absolute property, has, inseparably, the absolute power over it; and he to whom is given the absolute power over an estate, acquires thereby the absolute property; unless there is something in the gift which negatives and overthrows this otherwise irresistible implication. . . . So, though a devise to a wife for life, and after her decease, she to give the same to whom she will, passes but an estate for life with a power; yet, if an express estate for life had not been devised to the wife, an estate in fee would have passed by the other words. Where, indeed, such an inconsistent life estate is given, the fee does not pass; for this whole matter rests upon intention. . . . Where an interest is given, generally, and without limitation, that gift is not converted into a mere power, by annexing thereto a general power of disposition. . . . But where there is an express and inconsistent estate for life given, the construction of the instrument is altogether different. For the express estate for life, negatives the intention to give the absolute property, and converts these words into words of mere power, which, standing alone, would have been construed to convey an interest."

The rule is written in the same way in numerous cases: "If the testator, in express terms, give an estate for life, the intention is manifest and beyond doubt; and in such case an added power of disposition cannot enlarge the estate." [Burleigh v. Clough, 52 N. H. 267.]

In Mansfield v. Shelton, 67 Conn. 390, four rules relating to this general subject are stated, the second of which is that: "A life estate expressly created

will not be converted into a fee, absolute or qualified, or into any other form of estate greater than a life estate, merely by reason of there being coupled with it a power of disposition, however general or extensive."

In Collins v. Wickwire, 162 Mass. 143, the will gave the property to the testator's wife, "during her natural life, with the right to dispose of the same by gift, or will at her decease;" and the principle that where a will gives an absolute ownership with full power of disposal, a limitation over is void because inconsistent with an absolute title, was invoked. But the court said that the principle was not "applicable where the will purports to give only a life estate to the first taker, with merely a power of disposition of the remainder as a separate interest."

In Swarthout v. Ranier, 143 N. Y. 499, the provision in the will was that the wife was to have the estate during her life, but it also gave her power to dispose of it, yet it was held to be a life estate with a power.

In Ramsdell v. Ramsdell, 21 Me. 288, the court, after discussing the authorities, says: "The rule to be extracted from these cases would seem to be, that where a life estate only is clearly given to the first taker, with an express power on a certain event or for a certain purpose to dispose of the property, the life estate is not by such a power enlarged to a fee or absolute right; and the devise over will be good." To the same effect is Wood v. Robertson, 113 Ind. 323.

In applying these rules of construction to this case, we will simplify the provision in question by changing the words so that it will read as a single, instead of a joint will. It then would be that "I will, bequeath and devise to my wife Nancy all the property, real, personal or mixed, of which I shall die seized, with full power of disposition, for and during her life." There is but one possible suggestion in

avoidance of the plainly expressed intention to devise a life estate, and that is to say the testator placed the life limitation on the power to dispose of the estate, instead of upon the estate itself. But that would be altogether fanciful, for two reasons: One, that it would be useless to limit the power of making disposition of the property to her life, since the end of life would, itself, put an end to the power of disposal; and the other is that the subsequent clause 3, devises the property which she may not dispose of to the persons therein named, thus showing it was the intention that her right of property ended with her life.

It seems to us to be manifest that each testator gave to the other a life estate in their respective estates, and both gave the remainders existing at the death of the survivor, to the three persons named, to be divided equally between them or their descendants.

To whom, then, did the property go on Nancy's decease? The will says to the three devisees, to be equally divided between them, or "their descendants." We have already stated that Albert died before Nancy and as it appears that he left no children, but did leave brothers and sisters, the first question on this branch of the case is, are brothers and sisters of a deceased, his descendants, within the meaning of the will? Ordinarily they are not. [Lich v. Lich, 158 Mo. App. 400.] By descendant from a person we mean one who comes *from* him, not one who may be collaterally connected *with* him. "Descendants" means "those who have issued from an individual, including his children, grandchildren, and their children to the remotest generation." [Tichenor v. Brewer, 98 Ky. 349; West v. West, 89 Ind. 529; Gordon v. Pendleton, 84 N. C. 98; Van Beuren v. Dash, 30 N. Y. 393.]

"'A descendant is a person who is descended from another, that is, one who proceeds from the body of another, however remotely. The word is the converse or opposite of ascendant. Descendants include every

person descended from the stock referred to. It is co-extensive with issue, but does not embrace others not of issue. It is not to be understood as meaning next of kin, or heirs-at-law, for these phrases comprehend persons in the ascending as well as the descending line, and may also include collaterals; but it does mean the issue of the body of the person named, of every degree, such as children, grandchildren and great-grandchildren, and all others in the direct descending line. And when the term 'descendant' is used in a will, it means only lineal heirs, those in the direct descending line from the person named, unless there is a clear indication of intention on the part of the testator to enlarge its meaning. And so it has been held that 'descendants' is a good term of description in a will, and includes all who proceed from the body of the person named, to the remotest degree. And this is the ordinary meaning applied to the word 'descendants,' not only by the profession, but by the laity.'' [Bates v. Gillett, 132 Ill. 287. See, also, 9 Am. & Eng. Ency. Law (2 Ed.), 399; 14 Cyc. 38; Rood on Wills, sec. 446, 2 Underhill on Wills, sec. 677.]

But counsel says that the expression ''descendants'' may, in some contexts, mean a brother or sister. If so, there is no sign of such meaning in this will. Inferences are strong to the contrary. Neither of the three devisees were children of the testators and there is no expression in the will to lead one to suppose there was any kinship, unless it be that Albert bears the same name. The moving cause of the gifts appears to have been affection arising from the association consequent upon having ''reared'' them. Naturally the testators had no interest, aside from them individually, which would reach further than their descendants. There is nothing in the words of the will, nor in the situation, to lead one to believe the testators meant their bounty to go to any one outside the immediate line of the devisees.

Albert dying without descendants, the legacy lapsed as to his interest. The statute (Sec. 546, R. S. 1909) saves lapsing only in cases where the "child, grandchild or other relative of the testator" dies "leaving *lineal* descendants."

But it may be said that each of the children took an estate in remainder, and though subject to be destroyed by an exercise of the power of sale by the life tenant, nevertheless it was a present interest, even during the existence of the life estate, only liable to be destroyed by an exercise of the power. And, therefore, it was a vested interest in Albert, Nancy May and Ollie, on the death of either of the testators, which could be assigned by them; or, on their death, intestate, would go to their heirs. Therefore Albert, having survived the testator James, there was cast upon him an estate in remainder, and whether considered as a vested or contingent remainder, it nevertheless was an estate or interest which, on his death intestate, would go to his heirs.

To this we say that would be true ordinarily. [Welsh v. Woodbury, 144 Mass. 542; Winslow v. Goodwin, 7 Met. 363; Putnam v. Story, 132 Mass. 205; Grosvenor v. Bowen, 15 R. I. 549; Scofield v. Olcott, 120 Ill. 362.] But, by the terms of the will here in controversy, the estates to Albert and the two other children, were not estates in remainder generally. The estate or interest of each was limited to their "descendants" if either of them should die. So, therefore, as already said, Albert dying without descendants, his legacy lapsed.

We have examined Lemmons v. Reynolds, 170 Mo. 227, and think it has no bearing on the questions presented in this case.

We do not find anything in the will justifying the claim of Nancy May and Ollie Greer. There is nothing to show them to be joint tenants. They own two-thirds of the estate and are tenants in common with

the owner of the other third, lapsed by Albert's decease. If the devise had been to a class, as to the children of A, then, if not prevented by statute, the survivors of the class at the testator's death would take the whole. But there is no possible ground for taking from them their distinctive individuality as devisees and putting them together as one entity or class.

The result is that the share which would have gone to Albert, had he lived, is undisposed of and, ordinarily, would belong to the general estate of the testator and be inherited by his statutory heirs. But in this case there arises this exceptional state of affairs: There are two testators in one will, with no distinction as to what particular property belonged to each, or whether it belonged to them jointly.

The result is, that after handing over to the two surviving devisees their undivided two-thirds of the whole estate, there remains one-third to go to the statutory heirs of both the testators. Then the question arises as to how the shares of the latter two sets of heirs are to be ascertained. We know of no better answer than to say that each set will inherit what is left of their ancestor's estate after taking out the two-thirds going to the two surviving devisees. And in order that justice may be done, as near as may be, it would appear proper that this two-thirds should be taken from the two estates proportionately. That is, if one testator left a greater estate than the other, a proportionately greater part of the share of the two devisees should be taken from it. Thus, for convenience, suppose the two estates were in money, amounting, together, to $12,000, of which James' estate was $9000 and Nancy's $3000. That would be $8000 for the two devisees, $6000 of which would be taken from the $9000 composing James' estate, and $2000 would be taken from the $3000 composing Nancy's estate. And that would leave $3000 to go to the statutory heirs

of James and $1000 to go to the statutory heirs of Nancy.

We have no means of knowing how or in what proportions the property was owned by the two testators, but believe the views herein expressed will enable a proper disposition to be made of the case. The judgment is reversed and cause remanded. All concur.