CHARLES SCHNEIDER et al., Appellants, v. FERDINAND KLOEPPLE et al.

Division Two, March 16, 1917.

1. **EVIDENCE: Objection: Raised First on Appeal.** An objection that a will, the common source of title, was not shown to have been admitted to probate, comes too late if made for the first time in appellant's brief.

2. **WILL: Reasons for Devise.** It was reasonable and natural that a devout Catholic, dying without descendants, should devise his real

estate to his wife, to use as she pleased during her life, the remainder at her death to go to a benevolent association of the church of his faith.

3. ———: **Heirs and Assigns Not Used: Intention.** Although the words "heirs and assigns" are not used, a devise, in the absence of words of limitation, conveys the fee, unless the language employed shows a lesser estate was intended. In the latter case, the lesser estate is created.

4. ———: **Life Estate With Power of Disposal: Remainder: Intention.** The language of a will was: "The real estate I bequeath to my wife Anna Maria Brink to use as she pleases, and at her death what remains is to go to the St. Joseph Catholic Orphan Asylum in St. Louis." *Held*, that an absolute estate in fee was not devised to Anna Maria, but the intention was, by language as clear and unambiguous as the words of creation, to create a remainder; that is, a life estate in her, with power of disposal, the remainder to vest in the Orphan Asylum.

5. ———: **Indefinite Devisee: Erroneous Name.** A will devised a life estate to testator's wife and the remainder to "the St. Jospeh Catholic Orphan Asylum in St. Louis, Missouri." At the date of his death there was no legal entity so named, but there was a corporation entitled "The Managers of the Roman Catholic Orphan Asylum of St. Louis," and there was then and has continued to exist since a voluntary unincorporated charitable institution known as "The St. Joseph Catholic Asylum," to the support of which the churches of the diocese, including that in which testator worshipped, contributed, but whether the contributions was made directly or indirectly does not appear.    Upon the incorporation of "The Managers of the Roman Catholic Orphan Asylums of St. Louis," the property owned by the St. Joseph Catholic Orphan Asylum and other incorporated orphan asylums in St. Louis was turned over to the archbishop of the diocese as president of "The Managers of the Roman Catholic Orphan Asylums of St. Louis," for the benefit of said orphan asylums, and the property subsequently acquired was so held and used. *Held*, that, in spite of the mistake in naming the devisee, the corporation is entitled to take the devise.

6. ———: ———: **Unincorporated Charitable Institution.** A charitable devise or bequest will be upheld and enforced if made to a voluntary unincorporated association. The corporate character of the devisee is not a prerequisite to the validity of such a devise.

7. ———: ———: **Erroneous Name.** Where a beneficiary is designated in a will by an erroneous name the bequest will not be avoided, if, by means of the name or by extrinsic evidence, the beneficiary may be identified.

Appeal from Maries Circuit Court.—*Hon. J. G. Slate, Judge.*

Schneider v. Kloepple.

Affirmed.

*Holmes & Holmes* and *Lorts & Breuer* for appellants.

(1) The purported will of William Brink was improperly admitted in evidence. It had not been admitted to probate and had not been proven, recorded, certified and attested as required by statute. R. S. 1909, sec. 564, 549; 565; Charlton v. Brown, 49 Mo. 353; Smith v. Estes, 72 Mo. 310; Farris v. Burchard, 242 Mo. 1; Barnard v. Bateman, 76 Mo. 414; Snuffer v. Howerton, 124 Mo. 637. (2) The real estate belonging to William Brink, and in the petition described, descended to Anna Maria Brink, his wife. R. S. 1909, sec. 332; 2 Cyc. 87, par. A; Celis v. Oriol, 6 La. 403; 14 Cyc. 99, note 43, citing Hollingsworth v. Barbour, 4 Pet. (U. S.) 466. (3) The devise of an estate, with power of disposal, will pass the fee. Hazel v. Hagan, 47 Mo. 276; Turner v. Timberlake, 53 Mo. 371; Small v. Field, 102 Mo. 104; Green v. Sutton, 50 Mo. 186; Evans v. Folks, 135 Mo. 403; Jackson v. Little, 213 Mo. 589; Cook v. Crouch, 100 Mo. 29; Gannon v. Albright, 183 Mo. 238; State ex rel. v. Tolson, 73 Mo. 320; Roth v. Rauschenbusch, 173 Mo. 582; Yocum v. Siler, 160 Mo. 181; Wead v. Gray, 78 Mo. 59. (4) The bequest over is void because of indefiniteness of beneficiary, the beneficiary is a private and not a public charity, and no trustee is appointed and no provisions made for its administration. Heiss v. Murphy, 40 Wis. 290; Underhill on Wills, secs. 811, 818, 826, 906 and 908; 5 Am. & Eng. Ency. Law (2 Ed.), p. 895; 2 Perry on Trusts, sec. 719; Schmucker's Estate v. Reel, 61 Mo. 592; 5 Am. & Eng. Ency. Law (2 Ed.), pp. 937, 939. (5) When the words of a will at the outset clearly indicate a disposition in the testator to give the entire interest, use and benefit of the estate absolutely to the donee, it will not be cut down to a less estate by subsequent or ambiguous words, inferential in their intent. Yocum v. Siler, 160 Mo. 281; Small v. Field, 102 Mo. 123; Jarman on Wills, sec. 1135; Gannon v. Albright, 183 Mo. 238; Gannon v. Pauk, 183 Mo. 265; Gannon v. Pauk, 200

Mo. 75; Grace v. Perry, 197. Mo. 559; Cornet v. Cornet, 248 Mo. 224; Killmer v. Wuchner et al., 37 N. W. (Iowa) 778.

*Pope & Terrill* and *C. C. Bland* for respondents.

Appellants say the devise of an estate, with power of disposal, passed the fee to Mrs. Brink. This would be true if such power had been granted, without restrictions or limitations to its exercise. But unlimited and unrestricted power of disposal was not granted to Mrs. Brink by her husband's will. The power conferred was to use the real estate as she pleases, and at her death what remains to go to the "St. Joseph Catholic Orphan Asylum at St. Louis." The plain intent and purpose of testator was to bequeath his real estate to his wife, not absolutely, but with power to use it as she saw proper, and possibly to convey it at any time during her life. If she did not convey it then it should go to the "St. Joseph Catholic Orphan Asylum of St. Louis." Therefore, under the most liberal construction in his favor the bequest to Mrs. Brink was for her life, with power of disposal at any time during her life, remainder of what was not disposed of by her to the "St. Joseph Catholic Orphan Asylum of St. Louis." Conceding she had this power of disposal, she could only exercise it during her lifetime, and what of the real estate she did not dispose of went to the remainderman. Mooy v. Gallagher, 36 R. I. 405; Kemp v. Kemp, 111 N. E. (Mass.) 673. But, granting for the argument that Mrs. Brink had a fee simple estate under her husband's will in all of his real estate, she by the second clause of her will adopted that portion of her husband's will, providing that any part of his real estate remaining undisposed of by his wife should go to the "St. Joseph Catholic Orphan Asylum," so that if Mrs. Brink took a fee to the lands of her husband under his will, she by her will passed the fee to the Asylum, or rather to the managing trustees, the corporation designated as the "Managers of the Roman Catholic Orphan Asylum of St. Louis." If the corporation is sufficiently designated in William

Brink's will as to be identified as the object of his boun-
ty, the gift was to a public charity.  Baskley v. Dou-
ley, 112 Mo. 561; Hadley v. Forsee, 203 Mo. 427; Rus-
sell v. Allen, 107 U. S. 167; Festorazzi v. St. Joseph
Catholic Church, 104 Ala. 327; Schmidt v. Hess, 60 Mo.
591; County Court v. Griswold, 58 Mo. 175; Missouri
Historical Society v. Academy of Science, 94 Mo. 459;
Hoeffner v. Clogan, 171 Ill. 462; Libby v. Tobbein, 103
Mo. 477; 2 Perry on Trusts (3 Ed.), sec. 734; Schmidt
v. Hess, 60 Mo. 591.

WALKER, P. J.—This is a suit to determine the in-
terest of the parties hereto and quiet the title to certain
land described in the petition in Maries County, Mis-
souri.  A trial resulted in a judgment for the defend-
ants, from which plaintiffs appeal.

The land described was a part of that of which Wil-
liam Brink died seized in October, 1883.  He died testate
leaving no children or their descendants.  The language
of his will in regard to his real property is as follows:
"The real estate I bequeath to my wife Anna Maria
Brink to use as she pleases, and at her death what re-
mains is to go to the St. Joseph Catholic Orphan Asylum
in St. Louis, Missouri."

William Brink died seized of 310 acres of land.  His
wife conveyed 160 acres of same to one Ben Smith to be
held in trust for a boy named Hoffman, whom she was
rearing but had not adopted.  At her death there re-
mained undisposed of 150 acres of the land, the same
being that now in controversy.  In October, 1912, the
wife died testate leaving no children or their descend-
ants.  In her will appears the following: "I wish that
my husband's will should be executed according to his
intention."

The parties to this suit entered into a stipulation
for the purposes of the trial embodying the following
facts: "That the fee to the land described in the peti-
tion was at the time of his death in William Brink; that
he died in October, 1883, and left no children or their
descendants surviving him; that Anna Maria Brink was

his wife, who survived him and died in October, 1912, and left no children or their descendants surviving her; that Charles Schneider and Rosa Koerber, plaintiffs, and Anna Winkel are respectively her nephew and nieces, children of her deceased brother Henry Schneider, and that she left no other heirs; that William Brink and his wife were members of the Catholic Church and died in that faith; that at the time of William Brink's death he was seized and possessed of other real estate than that described in the petition and that said other real estate was conveyed by his widow to one Ben Smith.''

The plaintiffs claim title by descent as the heirs at law of Anna Maria Brink. The defendants claim title by purchase from the Managers of the Roman Catholic Orphan Asylums of St. Louis, as the owner of the property of the St. Joseph Catholic Orphan Asylum of St. Louis.

I. It is contended that the will of William Brink was improperly admitted in evidence on the alleged ground it had not been shown that it was admitted to probate. This objection appears for the first time in appellants' brief. The only objections made to the will at the trial were (1) that it did not bequeath any property to the Managers of the Roman Catholic Orphan Asylums of St. Louis, and (2) that it shows on its face that it is a bequest in fee simple. No objection having been made and preserved as now contended, it cannot be effectively interposed at this time.

*Will in Evidence.*

II. Appellants contend that by the terms of the will the fee passed to Anna Maria Brink and hence the lands remaining undisposed of descended at her death to her heirs.

A question determinative of this case, so far as the terms of the will are concerned, is: what was the inten-

tion of the testator? said by Chief Justice MARSHALL (Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322), "to

Intention of Testator: Nature of Devise.

be the pole star in ascertaining the construction of wills." This maxim has been emphasized by our statute (Sec. 583, R. S. 1909), which provides that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." The testator had no children or other heirs. He and his wife had lived together many years. They were devout Catholics. The terms of his will indicate that the disposition of his property was prompted by marital affection and benevolence. It was not only natural but reasonable, measuring his conduct by that of other right-minded men under like circumstances, after having lived harmoniously and with mutual helpfulness with his wife for a long term of years, he should desire that after his death she should use the property as she pleased during her life and at her death what remained undisposed of should be devoted to the assistance of a charitable institution conducted under the auspices of the church in the faith of which he had lived and comforted by the promises of which he had died. The words of this devise are plain and direct. If reasons be required to define the testator's purpose, these we have given are ample.

This having been the testator's intention, what estate is created by the terms employed? Supplementary to the recognized rules of construction we are aided by the statute (Sec. 579, R. S. 1909), which provides in effect that although the words "heirs and assigns" are not used, the devise of lands and other estates will, in the absence of words of limitation, convey the fee or absolute title; but if the language employed shows that a lesser estate was intended, then the latter will be held to have been created.

The words employed by the testator here do not create an absolute estate such as is contemplated by the statute. On the contrary, there is an express limitation

indicative of a purpose to create a remainder. After providing that the wife is to have the real estate "to use as she pleases" there follows the proviso that at her death what remains is to go to the orphan asylum named. This language is more direct in declaring the limitation upon the estate created than that found in Gibson v. Gibson, 239 Mo. 490, in which we held, after an exhaustive review of the cases on this subject, that the widow took a life estate by clear implication with power of disposal. As in that case, it must not be understood from our ruling that the estate created is limited or cut down. The words of limitation here are as clear and unambiguous as the words of creation; and the one not only coexists but is a part of the other. In other words, there is created a life estate with power of disposal, remainder to vest as designated. There is nothing in Middleton v. Dudding, 183 S. W. 443, contravening the conclusion here reached. There the terms of the devise were such as to create an absolute estate; here they are not.

That the wife recognized and sought to effectuate her husband's purpose in the testamentary disposition of his real estate is evident from the desire expressed in her will that her husband's will should be executed according to his intention. The terms of the husband's will being, in our opinion, clear and definite, no question is left as to the nature of the estate created, and it is not necessary to determine whether the relative words used in the wife's will are dispositive or precatory. Whether one or the other is not material; they at least constitute a persuasive argument in favor of the correctness of the construction given to the husband's will.

III. It is contended that the will of William Brink did not name a residuary legatee; that there was at the time of his death and when this case was tried no legal entity named the St. Joseph Catholic Orphan Asylum of St. Louis, but there was at said time a corporation entitled "The Managers of the Roman Catholic Orphan Asylums of St. Louis."

<div style="margin-left:2em">Indefiniteness of Beneficiary.</div>

There was parol proof that for many years- before William Brink made his will, and continuously since that time, there has existed in the city of St. Louis a voluntary charitable institution known as the St. Joseph Catholic Orphan Asylum. Its purpose was to provide a home for orphan boys of Catholic parentage. The churches in the diocese of St. Louis, including that in which the testator worshipped, contributed to the support of this asylum. Whether this was done directly or through the medium of the incorporated board of managers does not appear; but it was shown that the asylum was widely known among Catholics, and it is apparent from the testator's will that he knew of its existence and its character. It is true that the institution to which the devise was made was not a corporation, but a bequest of the character here under consideration will not be permitted to fail on that account.

In Schmidt v. Hess, 60 Mo. 591, land was devised to a church for a burial ground. The church was not incorporated. This court, in discussing the non-incorporation of the church for whose benefit the grant was made, said that while there "was no one *in esse,* at the time of making donation, capable of being the recipient of the trust, yet the use being a charitable one, a court of equity, having ascertained the intent of the grantor, will not allow the grant on that account to fail."

In Missouri Historical Society v. Academy of Science, 94 Mo. 459, it was held that a charitable gift would not be permitted to fail because of the non-incorporation of the society to which and for whose benefit the conveyance was made.

In Lilly v. Tobbein, 103 Mo. 477, the testator devised all of his real estate and personal property to his wife for her natural life and at her death one-half to go to her heirs and the other half to the Catholic Church at Lexington. The Catholic Church named was at the death of the testator an unincorporated association. The court, in discussing the character of the devise, said: "Ordinarily there must be a devisee in existence capable of taking, otherwise the devise is of no validity. But

it is well settled law that a charitable devise or bequest will be upheld and enforced if it is made to a voluntary unincorporated association."

From these cases it will be seen that the corporate character of the devisee is not a prerequisite to the validity of a devise.

While contending that the beneficiary named cannot take the residuary estate, it is also contended that the testator erroneously designated the devisee, intending the devise to be to the incorporated association, "The Managers of the Roman Catholic Orphan Asylums of St. Louis," and hence no estate was created. If it be admitted that the devisee was erroneously named, this will not avoid the devise. Under the circumstances here in evidence this general rule is applicable; where a beneficiary is designated by an erroneous name the bequest will not be avoided if it is possible by means of the name, or by extrinsic evidence, to identify the beneficiary intended.

To illustrate: In Moore v. Moore, 25 Atl. (N. J.) 403, the testator, in making bequests to several religious corporations, did not designate them under their correct corporate names. Extrinsic evidence was admitted to show the corporations meant, the court holding that this was sufficient to identify the legatees with entire certainty, and therefore the gifts were upheld.

In Bristol v. Ontario Orphan Asylum, 22 Atl. (Conn.) 848, the testator gave a legacy to the Canandaiqua Orphan Asylum. There was no asylum of that name, but there was at Canandaiqua an asylum named the Ontario Orphan Asylum. Evidence was admitted to show that the testator intended the bequest for the Ontario Asylum and the legacy was upheld.

In Minot v. Boston Asylum, 7 Metc. (Mass.) 416, there was a gift to the Boys Asylum and Farm School. There was no association of that name except under the name of the Boston Asylum and Farm School for Indigent Boys. It was held that this association took the legacy.

In Smith v. First Presbyterian Church, 26 N. J. Eq. 132, there was a gift to Blair's Academy of Blairstown. There was no institution of this name, but there was one under the corporate name of Blair's Presbyterian Academy. It was held that it took the legacy.

In Van Nostrand v. Board of Domestic Missions, 59 N. J. Eq. 19, a bequest was made to the Domestic Missionary Society. This was claimed by the Board of Domestic Missions of the Reformed Church. Parol evidence was admitted to show that this was the institution meant by the testator, and it was held to be the legatee.

In Cook v. Universalist General Convention, 101 N. W. (Mich.) 217, a testatrix bequeathed a portion of her estate to the Universalist Japan Mission Fund. It appeared that the Universalist General Convention was the only organized society of the denomination having a mission in Japan. Proof was made of this fact and that the testatrix had contributed funds to that end and the Universalist Convention was held entitled to the fund.

In Mason v. Massachusetts General Hospital, 93 N. E. (Mass.) 637, it is said generally that in determining a testator's intention in designating a beneficiary the circumstances at the time of the execution of the will may be considered, and where, in the light of same, it is plain what institution was intended, that institution must be taken to be the proper beneficiary.

In Peckham v. Newton, 4 Atl. (R. I.) 758, a testator directed, after the expiration of a life estate provided for in the will, that the remainder of his estate be given to the Home of the Aged in Newport. There was no association of that name, but there was a corporation called the Association for the Aid of the Aged. It was held that it was entitled to the bequest.

Without further burdening the opinion with excerpts from other cases, it will suffice to say that Reilly v. Union Protestant Infirmary of the City of Baltimore, 40 Atl. (Md.) 894; Ross v. Kiger, 26 S. E. (W. Va.) 193, and McDonald v. Shaw, 98 S. W. (Ark.) 952, announce a like doctrine.

In the case at bar evidence was introduced showing that upon the incorporation of ''The Managers of the Roman Catholic Orphan Asylums of St. Louis'' the property theretofore owned by the St. Joseph Catholic Orphan Asylum and other unincorporated orphan asylums in St. Louis was turned over to the archbishop of the diocese as president of said Managers of the Roman Catholic Orphan Asylums of St. Louis to be held for the benefit of said orphan asylums, and that the property subsequently acquired was so held and used.

From all of which the conclusion is authorized that despite the fact a mistake may have been made by the testator in naming the beneficiary, the proof is sufficient to show that the corporation is entitled to take the devise. Especially is this true where it is shown that the corporation is but a legal medium through which the property devised is applied to the benefit of the association named. The judgment of the trial court is therefore affirmed and it is so ordered. All concur.