ARTHUR FOSTER, OTIS FOSTER, LUVENA WHITTON and ELLA MORRIS v. MATHEW NORMAN, MAGGIE BRANDON, ALEXANDER BRANDON, LORETTA OWENS, SINCLAIR SPEEKS, MARY ROBINSON, ALICE COSTELLO and SARAH MILLER, Appellants.—143 S. W. (2d) 248.

Division Two, September 27, 1940.

*Harvey V. Tucker* and *Geo. L. Vaughn* for appellants.

*J. C. Hoester, Jr.,* for respondents.

LEEDY, J.—This is an action contesting the validity of a certain propounded instrument as the last will and testament of Elizabeth Lydia Brown, late of the County of St. Louis, who left an estate consisting of both real and personal property.

The purported will is dated March 23, 1936, and was admitted to probate in the Probate Court of St. Louis County on April 27, 1936. Within one year thereafter this action was instituted by plaintiffs-respondents, who are alleged to be the heirs-at-law of said Elizabeth Lydia Brown.

The petition alleges, as the grounds of the contest, want of mental capacity and undue influence. Upon a trial in the circuit court, it was held that the proponents of the will had failed to make a prima facie case, and a peremptory instruction was given directing the jury to find that the instrument in question is not the last will and testament of deceased. Such a verdict was returned, and judgment rejecting the will was entered thereon and defendants-appellants, after an unvailing motion for a new trial, appealed to the St. Louis Court of Appeals. That court held that title to real estate is involved (the will having devised realty), and properly transferred the cause here.

The attesting witnesses testified on the part of proponents, and no point arises as to the sufficiency of their testimony to show that testatrix signed the writing as her last will, in their presence, and that they subscribed their names as witnesses thereto in her presence. The contention is that proponents failed to sustain the burden cast upon them to show soundness of mind on the part of testatrix. That such is one of the elements of proponents' prima facie case there can be no doubt. It is incumbent upon the proponents of the will in the first instance to make proof of the due execution of the will, i. e., compliance with all the requirements and formalities prescribed by statute, *and that the testator was at the time of sound mind.* [Weaver v. Allison, 340 Mo. 815, 102 S. W. (2d) 884; Fletcher v. Henderson, 333 Mo. 349, 62 S. W. (2d) 849; Mayes v. Mayes (Mo.), 235 S. W. 100; Berkemeier v. Reller, 317 Mo. 614, 296 S. W. 739.] This is true whether the contest is on the ground of want of mental capacity, or not. And the burden of proof as to testator's sanity remains with proponents throughout. [Authorities supra.]

Testatrix, a colored woman, was approximately 50 years of age at the time of her death, which followed a week or ten days after the making of her will. The cause of death was not shown. She lived in Kinloch Park in St. Louis County. The will was drawn by William H. Preiss, a lawyer practicing at University City, and he acted as one of the subscribing witnesses. He testified to the circumstances under which the will was prepared and signed substantially as follows: That in response to a telephone call he went to the home of Rev. Bell, a colored minister, living in South Kinloch (who was also the other attesting witness), and there received from Rev. Norman, likewise colored, her minister, and one of the beneficiaries under the will, a memorandum purporting to show the disposition testatrix desired to make of her estate; that he was informed that she was ill and unable to come to his office; that he typed the will in the home of Rev. Bell and took it to the home of testatrix, where he found her ill and confined to her bed; that there was a group of colored people in the house at the time, and that he and Rev. Bell went into the bedroom, and Rev. Norman remained in the dining room; that in

his conversation with testatrix in the bedroom, in the presence of Rev. Bell, the only other person present, he told her that Rev. Norman had furnished him with information as to how she wanted her property disposed of, and that she replied that she had instructed Rev. Norman to call him to prepare her will; that the will, as prepared, was read over to her paragraph by paragraph, and that he asked her in each instance if that was the way she wanted the property disposed of, and she replied in the affirmative; that after reading over the entire will he asked her if she wanted to make any change in it, and she said it was the way she wanted to dispose of her property and did not want any changes made. He testified that he furnished her with his pen and she made her mark unassisted. His testimony in that connection being, "I said 'Will you sign the will?' She said, 'I will make my mark.' I said, 'can't you write?' She said, 'I would rather make my X-mark.' " On cross-examination he was asked if she was not "almost in a comatose state," to which the witness replied "No, sir." He was further asked by counsel for contestants "Was she very feeble, in your opinion?" and the answer was "No, sir, she was not." "Q. How did she sign her mark? A. I furnished her with a pen and she made her mark unassisted." Rev. Bell, the other attesting witness, was called on the part of the proponents. He testified he had known testatrix ten or fifteen years and detailed the circumstances in connection with the preparation and signing of the will substantially as testified to by the witness Preiss, except that Rev. Bell said Rev. Norman was in the bedroom during the time he and the attorney were there.

Appellants sought to elicit an opinion from the witness Preiss, based on his observation of the testatrix, including her manner of speech and her apparent physical condition, as to her soundness of mind, and this the court denied on the objection of the contestants. A somewhat similar but less detailed question was put to the witness Bell, and on contestants' objection, he was not permitted to answer. Thereby the court fell into error. This precise point was ruled in Fields v. Luck, 335 Mo. 765, 74 S. W. (2d) 35, where it was held, on substantially parallel facts, that to refuse to permit a subscribing witness to give his opinion as to the mental soundness of testatrix at the time she made the will was prejudicially erroneous, and to such holding we adhere.

Other errors have been assigned but as they are of such nature as are not likely to recur upon another trial, they will not be discussed. For the error noted, the judgment is reversed, and the cause remanded. All concur.