ROY GLIDEWELL ET AL., Appellants, v. PAUL GLIDEWELL ET AL., Respondents, GENERAL BOARD OF THE CHURCH OF THE NAZARENE, a Corporation, Intervenor, ARTIS FRANKLIN, Trustee for the Membership of the Local Nazarene Church at Milan, Missouri, Appellants, No. 41443—230 S. W. (2d) 752.

Division One, May 8, 1950.

Motion for Rehearing or to Modify Opinion Overruled, and Opinion Modified on Court's Own Motion, June 13, 1950.

*L. E. Atherton* and *P. M. Marr* for appellants Roy Glidewell, Victoria Glidewell, Laura Holman, Rosa Robinson, James Glidewell and Nancy Compton.

*George T. Aughinbaugh, Hunt C. Moore, W. J. Carroll, Herbert S. Brown* and *A. D. Campbell* for intervenor and trustee appellants.

*Kitt & Lintner* and *Wilder Lintner* for respondents.

 LOZIER, C.—Plaintiffs are brothers and sisters of Huldah Willis Campbell, and defendants are Huldah's brother, Paul Glidewell (individually and·as executor of Huldah's estate) and his children (including his son Wilbur, and his daughter, Huldah Mettle). Plaintiffs and Paul are Huldah's heirs at law. The suit, filed in May, 1947, was one to contest Huldah's 1946 purported will (which had been probated), and to set aside certain conveyances from Huldah to Paul and Mrs. Mettle because of mental incapacity and undue influence. In January, 1948, the General Board of the Church of the Nazarene, a corporation, intervened. As the three trustees of the local church of the Nazarene were already parties, the court appointed a trustee for its membership and he became a party and filed answer.

In its petition, intervenor adopted the allegations of plaintiffs' petition attacking the 1946 purported will and the conveyances, and also sought to establish Huldah's 1923 purported will (probate of which had been refused in December, 1947, on the ground that it had been revoked by the 1946 purported will). By agreement of the parties, the causes were consolidated and all issues were to be tried by the court without a jury, other than the issue as to the 1946 purported will. However, at the conclusion of the trial, it was agreed that this issue, and the issues as to the validity of the conveyances, would not be tried pending determination of the matters involved in these appeals. Plaintiffs, intervenor and the trustee, appealed from the judgment hereinafter summarized, and the appeals are here because title to real estate is involved and the amount in dispute exceeds $7500.

On February 14, 1923, B. L. Willis and Huldah Willis, his wife, executed the following document: "We, B. L. Willis and Huldah Willis, husband and wife, residing in Sullivan County, Missouri, being of sound mind and memory, do ·make, publish and declare the following as and for our last will and testament, that is to say: That we both own and possess real and personal property in our own right, and desire to make the following testamentary disposition of the same. That is if I, the said B. L. Willis, shall die before my said wife, it is my will, and I do hereby give, devise and bequeath to my said wife, all property owned by me at my death. And I, the said Huldah Willis, if my said husband survive me, it is my will that he shall take, and and I do hereby give, devise and bequeath to him all property possessed and owned by me at my death. And it is our will that if, upon the death of the survivor of us, there shall be any property remaining undisposed of, we give, devise and bequeath the same to the church of the Nazarene, to have and to hold the same absolutely. In witness whereof, we have hereunto set our hands this the 14th day of

February, 1923.'' Two witnesses subscribed the attestation that B. L. and Huldah declared the instrument as their last will and that the witnesses had signed as such in the presence of B. L. and Huldah and of each other.

B. L. Willis died in 1927 and the document was probated as his last will. In 1938, the probate court, on Huldah's application, entered an order dispensing with administration of his estate on the ground that the personal property did not exceed the amount allowed her as the widow's absolute property. Prior to her death Huldah made several conveyances of real estate, of some of which B. L. Willis died seized in his own name, some of which had been owned by them by the entirety and some of which she acquired after his death.

On May 13, 1946, Huldah executed a document purporting to be her last will wherein she devised a farm to her brother Paul, her residence to Mrs. Mettle, and certain personalty to various parties plaintiff and defendant. At the same time, and as part of the same transaction, she executed two warranty deeds, one conveying the farm to Paul and the other the residence to Mrs. Mettle. She placed the deeds in the custody of the First National Bank at Milan in separate envelopes upon each of which she had signed a written direction to the bank to deliver the deed ''to the grantee upon the death of the grantor.'' After her death, in March, 1947, the deeds were delivered to, and recorded by, the grantees.

The judgment was: (1) That both the General Board and the membership of the local church had interests entitling them to ·be made parties and that neither ''was prohibited by law from taking property under the will of B. L. Willis and Huldah Willis, executed by them on February 14, 1923''; (2) that ''the 1923 joint will was not irrevocable by Huldah Willis and that the evidence was insufficient to establish a legal contract'' not to revoke; (3) that under the 1923 will, all of the property of B. L. Willis passed to Huldah in fee simple and that such estate was not cut down nor limited ''by the fifth paragraph of their said will'' to a life estate; and (4) that Huldah had the right to make a valid disposition of such property and that, if she had not made such a valid disposition, all such property owned by her at the time of her death would pass ''under the will which she executed with her husband, B. L. Willis, on February 14, 1923.''

It is conceded that the 1923 document was the last will of B. L. Willis. Thus, the initial matter for determination is the nature of the interest acquired by his widow in property owned by him solely at the time of his death. (His will was not effective as to the property owned by them by the entirety. See Stewart v. Shelton, 356 Mo. 258, 201 S. W. 2d 395.) The personalty was negligible. The realty is hereinafter listed.

The result of our search for ''the true intent and meaning of'' this testator (Sec. 568, both R. S. Mo. 1939 and Mo. R. S. A. and cases

cited), is our ruling that the will of B. L. Willis vested in Huldah a life estate with power of disposal of the fee during her lifetime. Paraphrased to read as his single will (as it was), we read: "I, B. L. Willis, residing * * * etc. I own and possess' real and personal property in my own right and desire to make the following testamentary disposition of the same, that is, if I shall die before my wife, it is my will and I hereby give, devise and bequeath to my said wife all property owned by me at my death. And it is my will that if upon the death of my said wife there shall be any of my property remaining undisposed of, I give, devise and bequeath the same to the church of the Nazarene, to have and to hold the same absolutely."

Absent the last quoted sentence, the devise to Huldah would have been one in fee. However, this sentence is a clear, unequivocal qualification or limitation upon the estate ▮▮▮ intended to be devised to her by the preceding sentence. It is not another devise of the fee; it is both a clear indication that she was to receive a life estate with power of disposal and a devise of the remainder, to take effect upon her death, in the event she had not exercised the power. The words of limitation are clear and unambiguous and supplement the words used in the devise to the wife. Sec. 564, both R. S. Mo. 1939 and Mo. R. S. A. and cases cited; Moran v. Sutter, 360 Mo. 304, 228 S. W. 2d 682; and 75 A. L. R. 71. See also Romjue v. Randolph, 166 Mo. App. 87, 148 S. W. 185, for construction of a joint will similar to that involved here.

As we stated in Shelton v. Shelton, 348 Mo. 820, 155 S. W. 2d 187: "The language of one will is rarely, if ever, like another and frequently a slight difference in words used calls for different constructions of testamentary provisions similar in other respects. * * * Therefore, decisions construing similar testamentary provisions are of small value as precedents and must be considered with caution. Bearing this in mind we believe that the effect of the clause under consideration in this case has been settled by our decisions construing similar provisions under similar circumstances. They hold that a gift though not expressly for life but with a limitation over of any part of the estate remaining at the death of the immediate devisee creates a life estate. This is of course a rule of construction to be applied in carrying out the intention of the testator."

The apparent conflict in the decisions is the result of the application of general principles to the facts in each case. The cases cited by respondents-defendants reaffirm the general uncontroverted rules that "a limitation over after a devise of the fee is void" and "that a devise of the fee cannot be cut down by subsequent ambiguous language." These cases, however, do not support the contention that Huldah was devised a fee *in this will*. In Armor v. Frey, 226 Mo. 646, 126 S. W. 483, the words "give, bequeath and devise" to children (first takers)

were held to convey only life estates because of a subsequent clause providing that "upon the death of my children without issue I direct that the share of such child shall revert to my estate." In Roth v. Rauschenbusch, 173 Mo. 582, 73 S. W. 664; Jackson v. Littell, 213 Mo. 589, 112 S. W. 53; Middleton v. Dudding (Mo. Sup.), 183 S. W. 443; and Palmer v. French, 326 Mo. 710, 32 S. W. 2d 591, where property was devised to the wife "absolutely and in fee simple," or "absolutely and forever," or to her, "her heirs and assigns forever" or as her "absolute property," the first devises were held to have been in fee and not cut down by the subsequent clauses relating to property undisposed of by the wife. In the instant case, however, the word "absolutely" (not necessary to, but suggestive of, a devise of the fee) was not used by this testator as to the estate first devised, but was used as to the estate last devised. In Gannon v. Albright, 183 Mo. 238, 81 S. W. 1162, the attempted limitation over failed for vagueness and ambiguity of language, a circumstance not present in the B. L. Willis will.

In Gibson v. Gibson, 239 Mo. 490, 144 S. W. 770, this court summarized the earlier cases and said: "This court has never been in dread of entails or perpetuities, hence, as 'reason is the life of the law,' those rules making such limitation over void, never should have been given any vitality in this State." And the tendency of the later decisions, in cases analogous to the present one, is to construe the will as vesting in the wife only a life estate with power of disposal. See Sorenson v. Booram, 317 Mo. 516, 297 S. W. 70, where the devise to the wife was "absolutely in fee simple"; and Schneider v. Kloepple, 270 Mo. 389, 193 S. W. 834, where the devise to the wife was "to use as she pleases, and at her death what remains to go to" an orphan asylum. See also: Armor v. Frey, and Romjue v. Randolph, supra; Blumer v. Gillespie, 338 Mo. 1113, 93 S. W. 2d 939; Chapman v. Chapman, 336 Mo. 98, 77 S. W. 2d 87; Presbyterian Orphanage of Mo. v. Fitterling, 342 Mo. 299, 114 S. W. 2d 1004; Graham v. Stroh, 342 Mo. 686, 117 S. W. 2d 258; Bolte v. Bolte, 347 Mo. 281, 148 S. W. 2d 441; Aurien v. Security Nat. Bank Sav. & Tr. Co. (Mo. App.), 137 S. W. 2d 679; Grundmann v. Wilde, 346 Mo. 327, 141 S. W. 2d 778; and English v. Ragsdale, 347 Mo. 431, 147 S. W. 2d 653. See also 11 Law Series, Univ. of Mo. Bulletin, pp. 37-51.

It is contended that even if B. L. Willis devised the remainder to "the church of the Nazarene" the devise was void; that there was no devisee in which the remainder could vest; that in 1927, "a church could not take a devise of real estate"; and that the General Board was a religious corporation incapable of taking title to real estate. It is also suggested that the local church was incapable of taking because it was an unincorporated religious association.

It is not necessary to determine whether or not the General Board could take title under the B. L. Willis will. The evidence shows quite

clearly that the "church of the Nazarene" referred to was the local church. This church was organized by a District Superintendent of the Nazarene Church in September, 1922, at the Pleasant Grove Schoolhouse, with 18 members (the surname of all save 2 being either Glidewell or Willis), including B. L. and Huldah Willis. B. L. Willis was elected one of the 3 members, and vice president, of the Board of Trustees. He attended the church regularly. While there was evidence that he had stated he might "change" the devise to the church, there is no suggestion whatever tending to indicate that by "church" he meant any Nazarene organization other than the local one.

B. L. Willis had subscribed to the doctrines of the Church of the Nazarene, and presumably had knowledge of its affairs. The 1919 Manual of the church specifically distinguished the "General Church" and the "Local Church." It provided for local church organization, including the election of at least 3 trustees to hold and manage church property for "the local church membership and the property constituted church authorities." B. L. Willis executed his will within 4 or 5 months after he had helped organize the local church. He had been a trustee of that church during the interim.

It being evident that this testator intended that the property undisposed of by his widow go to the local church, the fact that the "General Board of the Church of the Nazarene" was incorporated (by pro forma decree under the provisions of Art. XI, Chap. 90, R. S. Mo. 1919) in December, 1923, is immaterial. Presumably he knew of the incorporation. The Church's 1919 Manual (in force when the will was made) and its 1923 Manual (in force when B. L. Willis died) contained identical provisions relating to election and powers of the trustees of the local church. Both authorize the trustees to "hold church property." Both require the incorporation of the local church before real estate is purchased and the *deeding* of such property directly to the *local church in its corporate name.* Neither refers to property *devised or bequeathed by will.* The only difference between the two is that the 1923 Manual requires *deeds* to contain a specified clause. B. L. Willis clearly intended the remainder to vest in the Pleasant Grove church and not the General Church of the Nazarene organization.

That the local church was unincorporated and could not, as a voluntary religious association, acquire or hold title to property (Farm & Home Sav. & L. Assn. v. Armstrong, 337 Mo. 349, 85 S. W. 2d 461) will not defeat the devise of the remainder. Charitable devises are favorites of the law. See Gossett v. Swinney (C. C. A., Mo.) 53 F. 2d 772, for summary and analysis of Missouri cases. And a gift for a religious purpose is one for a charitable purpose. Ervin v. Davis, 355 Mo. 951, 199 S. W. 2d 366. In that case we said:

"Since the church was an unincorporated association it was compelled to hold its property by trustees."

Harger v. Barrett, 319 Mo. 633, 5 S. W. 2d 1100, involved circumstances similar, in several respects, to those here. We upheld a devise to the local church, an unincorporated association, in an action brought by the several members of the church suing for themselves and the other members. We there said, "the right of the parties plaintiff to sue for, and *that of the church to receive*, the property is fully determined by the cases cited," and suggested that the church appoint trustees to take and administer ▮ the gift. (Italics ours.) See also Schmidt v. Hess, 60 Mo. 591, cited with approval in Russell v. Allen, 107 U. S. 163, 2 S. Ct, 327, 27 L. Ed. 397; Marr v. Gallbraith, 238 Mo. App. 497, 184 S. W. 2d 190; and Society of Helpers of Holy Souls v. Law, 267 Mo. 667, 186 S. W. 718.

▮ This power of disposal attached to the clearly implied life estate was exercisable, however, only during her lifetime. The B. L. Willis will disposed of the fee (the remainder following Huldah's life estate) in the event she had not exercised this power prior to her death. That is, B. L. Willis himself made the devise to the church of all of his property which "remained undisposed of" by her "upon her death." See Romjue v. Randolph, supra; and Krause v. Jeannette Inv. Co., 333 Mo. 509, 62 S. W. 2d 890. Power of disposal by will may be granted to a life tenant expressly or by implication. Armor v. Frey, supra. But here the language ("property remaining undisposed of upon her death") renders untenable the suggestion that Huldah Willis had the power to dispose of the property by will.

In Garland v. Smith, 164 Mo. 1, 64 S. W. 188, Persis Smith, the owner of an equitable life estate, was empowered "to sell, mortgage, encumber, . . . or otherwise *dispose* of the same to such person or persons and for such . . . purposes as she may *at any time, by writing by her signed,* direct and appoint." The conveyance further provided that "*upon the death* of said Persis Smith *without having disposed* of the premises in the manner aforesaid," then to others. (Italics ours.) Persis Smith executed a warranty deed to George Smith, and, in the residuary clause of her will (duly probated), devised and bequeathed to George Smith "all of the rest, residue and remainder of the property of whatever nature, real, personal or mixed, wherever situated, of which I may die seized *or as to which I may have any power of appointment.*" (Italics ours.) We held that the grantor did not intend that the life tenant should have the power of disposal by will. (Compare the provisions of the will in the earlier case of Wead v. Gray, 78 Mo. 59, in which a contrary result was reached.) See also: Presbyterian Orphanage of Mo. v. Fitterling, supra; Cook v. Higgins, 290 Mo. 402, 235 S. W. 807; Burnet v. Burnet, 244 Mo. 491, 148 S. W. 872; Cochran v. Groover, 156 Ga.

323, 118 S. E. 865; and Davis' Admr. v. Bottoms, 258 Ky. 228, 79 S. W. 2d 963.

We therefore approve the trial court's rulings that both the General Church and the membership of the local church had interests entitling them to become parties, and that the latter could legally take property under the B. L. Willis will. However, he erred in holding that Huldah received the fee under her husband's will.

The issue *as to the B. L. Willis sole property* is whether Huldah Willis exercised her disposal power. If she did, the remainder was cut off; if she did not, the remainder was not divested. St. Louis Union Tr. Co. v. Clarke, 352 Mo. 518, 178 S. W. 2d 359; Keller v. Keller, 343 Mo. 815, 123 S. W. 2d 113; and Grace v. Perry, .197 Mo. 550, 95 S. W. 875.

B. L. Willis died seized, in his own name solely, of the farm, of Lot 1, Blk. 6, and of a tract in Sec. 10. In 1929, Huldah executed a state highway right-of-way deed for a part of this tract for $200, and in 1945, sold the lot and the rest of the tract for $3,000, executing a warranty deed therefor. While these conveyances are not here involved, we note that they apparently were made under her disposal power. Therefore, the only B. L. Willis property in which the church might now have an interest is the farm. That interest exists if Huldah failed to make a valid exercise of her power during her lifetime. On October 10, 1945, Huldah gave a deed of trust upon the farm to secure her note for $1200 in which Paul was trustee and Wilbur was beneficiary. On May 13, 1946, she executed the warranty deed to the farm to Paul. The validity of these two conveyances is yet to be determined.

In its petition, intervenor pleaded an agreement between B. L. and Huldah Willis to execute joint and mutual wills and alleged that, by reason of having probated the 1923 document as B. L. Willis' last will and accepting the benefit of same, the document became her will also which ■■■ she was estopped to revoke. However, the record contains neither direct evidence of such an agreement nor evidence of circumstances from which such contract can be inferred. Absent clear and convincing evidence of such agreement, the will (if it was her will) was revokable by her and the trial judge properly so ruled. Plemmons v. Pemberton, 346 Mo. 45, 139 S. W. 2d 910. (Even if there was a contract, the *will* was revokable though the *contract* was not. 57 Am. Jur. 466; Anno. 3 A. L. R. 172; and Anno. 169 A. L. R. 9. Here, intervenor sought to establish the document as her will, not to enforce a contract not to revoke.)

At the trial intervenor properly assumed the burden of establishing the 1923 document as Huldah's will, but failed to offer any evidence tending to show that she was of sound mind when she executed the purported will. Neither plaintiffs nor defendant offered evidence on this issue. Plaintiffs objected to the introduction of the

document, moved for a directed verdict at the close of all the evidence and preserved the point in their motion for new trial. See Rayl v. Golfinopulos (Mo Sup.), 233 S. W. 1069, and Vaughn v. Vaughn (Mo. Sup.), 221 S. W. 2d 170, both cited by plaintiffs. Testamentary capacity must be affirmatively proved by the proponent of the will. Weaver v. Allison, 340 Mo. 815, 102 S. W. 2d 884, 110 A. L. R. 672 (Annotation, on this point, p. 675); and Foster v. Norman, 346 Mo. 850, 143 S. W. 2d 248. The trial court's ruling establishing the 1923 document as Huldah's will was therefore erroneous.

Issues yet to be determined below are the validity of the purported 1946 will and several conveyances. Two of the conveyances (relating to the farm) have already been referred to and the interests of the parties discussed. As the residence property (deeded and devised to Mrs. Mettle in the deed and purported 1946 will, respectively) was purchased by Huldah in October, 1945, she owned the fee, and the church, having failed to establish the 1923 purported will, has no interest in this property. Similarly, the church has no interest in Lots 6, 7 and 8, Blk. 6, or the tract south of Lot 6 (deeded to Paul in December, 1939), as they were acquired in 1922 by the entirety.

The judgment should be and is reversed and the cause is remanded with directions for further proceedings in conformity herewith, namely: (1) entry of judgment that under the will of B. L. Willis the local church acquired the farm in fee simple, subject to Huldah's life estate with power of disposal during her lifetime; (2) entry of judgment that the 1923 document was not Huldah's last will and testament; (3) determination of these issues: (a) whether the 1946 document was Huldah's last will and testament; (b) the validity of the 1939 and 1946 warranty deeds to Paul, the 1946 warranty deed to Mrs. Mettle and the 1945 deed of trust to Paul, trustee; and (c) the interests of the parties in and to the farm at the time of Huldah's death and in and to the parcels of real estate and the personal property owned by Huldah at the time of her death. *Van Osdol* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All the judges concur.