## THERESA TALLENT v. LOUISA FITZPATRICK and JOHN KAISER, Appellants.

**Division One, December 6, 1913.**

1. **WILL: Power of Donee to Sell.** Where the will gives a life estate to the widow and the remainder to children named, with power in her to sell and make valid conveyances, the donee of the power can exercise it only in the precise form in which it is given. The remainder devised is not to be defeated except by the terms of the will creating it.

2. ———: ———: **Gift.** A will which created a life estate in testator's wife and a remainder in his children, "with full power" in her "to sell at any time any or all the real estate and convey the same by good and lawful deeds of conveyance at any time that she may think best, and to her best interest," did not authorize her to give away the property to one or more of her children, to the exclusion of the others, nor to convey the property to them for an alleged satisfaction of some vague, uncertain and unprobated claims against testator's estate.

3. ———: ———: ———: **Sale: Definition.** A sale of property is a transfer of the absolute and general property in the thing

for a price in money paid or promised; if any other consideration than money be given, it is not a sale, though it may be an exchange or barter; and if no valuable consideration be given for the conveyance, it is a gift, not a sale.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman*, Judge.

AFFIRMED.

*Brewster, Ferrell & Mayer* for appellants.

If Margaret Kaiser sold this property according to what seemed to her to be her best interest, then she exercised the right given her by the will, and, the judgment should be reversed. No person can read the testimony in this case and have any doubt but that at the time these deeds were executed and delivered to Mrs. Fitzpatrick, Margaret Kaiser intended to pay the $300 note held by Mrs. Fitzpatrick and to make an arrangement whereby her two children, John M. Kaiser and Louisa Fitzpatrick, should take care of the mother during her lifetime. Several of plaintiff's witnesses testified that Mrs. Kaiser had told them that she had deeded the property to her son and daughter and that they had agreed to take care of her during her lifetime. The uncontradicted testimony of Mrs. Fitzpatrick shows that when the deed was handed to her, Mrs. Kaiser demanded the $300 note and told her that she expected her, Louisa Fitzpatrick, and John M. Kaiser, to take care of her during her lifetime, and the testimony is uncontradicted that they did take care of her and that they were the only ones of her children who did take any interest in her or furnish her with anything whatever.

*John S. Boyer* for respondent.

(1) The will of John Kaiser conferred a power to sell and not a power to give away his estate. It further provided for the devolution of the estate to

certain named remaindermen, upon the termination of the life estate. (2) The deeds of Margaret Kaiser, the widow, are void because not made in pursuance of any power granted. They are deeds of gift, the execution of which rendered the life tenant penniless, deprived the remaindermen of their estate, and subverted the dominant intention of the testator. In order that the execution of a power may be valid the law requires a strict compliance with the direction of the donor, as expressed in his will, and particularly is this true as to a power to cut out remaindermen. A naked power to sell is not a power to mortgage. A *fortiori* it is not a power to give away the property conveyed. Garland v. Smith, 164 Mo. 15; Dougherty v. Dougherty, 204 Mo. 234. (3) The power of sale annexed to the life estate did not enlarge the life estate into a fee, nor was it repugnant to the life estate or to the remainder over. Garland v. Smith, 164 Mo. 13; Grace v. Perry, 197 Mo. 562. (4) The fundamental idea in the will of John Kaiser was to preserve his estate as a means of support for his wife, and to leave something for his children at her death, provided the entire estate was not necessarily consumed in the support of his wife and for her benefit. The widow assumed to dispose of the entire estate by the execution of the deeds in question, without good or valuable consideration therefor, against her own interest and to the complete loss of the estate to the remaindermen. This voluntary gift was clearly without authority, and a plain perversion of the purposes of the testator. The deeds were void.

## STATEMENT.

John Kaiser died on the 24th of June, 1899, having first made and published the following will:

"I, John Kaiser, of St. Joseph, Buchanan county, Missouri, being of sound mind and memory, and con-

sidering the uncertainty of this frail and transitory life, do hereby make and publish this my last will and testament, hereby revoking any and all former wills by me at any time heretofore made.

"First. I give, bequeath and devise to my beloved wife, Margaret Kaiser, all my estate and property, real, personal and mixed, with which I may be possessed, or that I shall in anywise be entitled to at the time of my death, providing and it is my will that all my just debts be first paid, to have and to hold and enjoy the same during the full term of her natural life, according to her own free will and pleasure without let or hinderance from anyone, with full power to sell at any time any or all of my real estate and convey the same by good and lawful deeds of conveyance at any time that she may think best, and to her best interest.

"Second. It is my will and I direct that my estate remaining at the death of my wife shall be equally divided between my children as hereafter named, or to their children, to-wit: First, Anna Bertha, wife of Gustave Kaiser; second, Louisa, wife of John Fitzpatrick; third, Alice Josephine, wife of Fred Sturmer; fourth, Theresa, wife of August Angst; and fifth, John M. Kaiser, each of said children share and share alike.

"Third. It is further my will and I request that my wife, Margaret Kaiser, act as the first executrix of this will and further that she be not required to give any bond as such executrix and that she be required to give no other account of said estate than is necessary to secure the rights of creditors.

"In witness whereof, I have hereunto set my hand and seal this 10th day of June, 1889.

"JOHN KAISER.    (Seal.)"

At the time of his death his children and wife mentioned in the will survived. He left little personal estate, but was the owner of a city lot of ground in St. Joseph, Missouri, whereon three houses were erected.

Six days after his decease his widow executed and delivered two warranty deeds, one in favor of Mrs. Louisa Fitzpatrick, and the other to John M. Kaiser, each conveying one half of said lot and each alleging a consideration of $1000. Both of the grantees in said deed were the children of the testator and mentioned in said will. Mrs. Fitzpatrick had resided in the house on the portion of the lot granted to her before the death of her father and continued to reside thereon until the death of her mother on the 5th day of March, 1909, and paid eight dollars per month rent during her occupancy of said lot. This sum, and an equal amount received by the mother for rent of the lot deeded to John M. Kaiser, seems to have been the only means of subsistence aside from her own labor which the widow had until her death. After the death of the widow, Theresa Angst Tallent brought this suit to avoid said deeds on the ground that they were gifts instead of sales, and therefore, beyond the power of the widow under the terms of the above will. Mrs. Fitzpatrick did not otherwise pay any money for the deed to herself, except that she testified that she rendered care and assistance to her mother while she lived, and surrendered a note for $300 executed to her husband by her father. Neither did John M. Kaiser pay anything in money for the deed to himself, but the evidence shows that after his father's death he gave his mother $200 and paid $150 during his father's lifetime for medical attention and funeral expenses, and that he rendered him some other financial assistance.

Mrs. Fitzpatrick testified that she did not intend to present any claim against her father's estate nor was any presented by her codefendant, John M. Kaiser. The evidence shows that the lots in question were worth from $4250 to $5000; that when her husband died the widow received from fraternal orders about $250. At the conclusion of the trial the court rendered judg-

ment annulling the two deeds, from which defendants have prosecuted this appeal.

## OPINION.

### I.

BOND, J. (After stating the facts as above).—The decisive question in this case is the effect of the terms of the will in granting estates to the devisees therein,

Will: Power of Donee to Sell.

and giving power of disposal to the life tenant. In clear and positive terms the testator made two devises of his property; first, the estate to his widow during the full term of her natural life; second, remainders in fee to his five children by name; third, the testator gave the widow power to sell and make valid conveyances of his real estate "at any time she may think best and to her best interest." In the construction of such wills the rule is fixed, that the donee of the power can only exercise it in the precise form in which it is given. [2 Washburn on Real Property (5 Ed.), p. 707; Garland v. Smith, 164 Mo. l. c. 15; Dougherty v. Dougherty, 204 Mo. l. c. 234; Burnet v. Burnet, 244 Mo. l. c. 505.]

The reason of this is that the remainder devised shall not be defeated except by the terms of the will creating it, for when a remainder is expressly devised in fee, and the testator goes farther and specifically points out how it may be cut off, any other method of extinguishing it would annul the will of its creator, hence the necessity for confining the execution of such power to the particular mode and manner provided by the donor. In the case of Burnet v. Burnet, supra, this doctrine is reaffirmed after a full review of the rulings in this State, and in consonance with the guiding motive of the law to make the will speak only the mind of its maker, whenever that can be lawfully carried out. Our conclusion is that by the language of the present

will, giving her a power to dispose of the property, the life tenant was restricted to a sale and conveyance in pursuance thereof in the proper and legal sense of the term, and that she had no power to defeat the remainders by any other form of alienation.

## II.

It only remains to see whether the two transactions, whereby the defendants acquired deeds to the property of their father in exclusion of the right of their sisters to share in the remainder devised by the testator to all of his children, was within the legitimate exercise of the power given to their mother to sell the land. We think not. No part of the price recited in either deed was paid by either grantee when the instruments were executed and delivered. Before making them the grantor took the will and consulted a Mr. Schnieder as to her authority, who seems to have told her that she could dispose of the property as she saw fit. Both of the defendants were present at this interview; when cross-examined as to the deeds then made, the defendant, Mrs. Fitzpatrick, testified, to-wit:

**Will: Power to Sell: Gift.**

"Q. These deeds recite that you are to pay $1000 for your half of the lot; you were to pay $1000 apiece for it? A. Yes, sir.

"Q. As a matter of fact you never paid any money? A. No, sir.

"Q. Never intended to pay any money? A. No, sir.

"Q. Did you ever present any claim in the probate court against your father's estate for anything that you claimed he owed you? A. No, sir; I would not have done it.

"Q. You lived with him in his house for eighteen years? A. Not right with him; lived adjoining him.

"Q. Do you know whether or not John Kaiser ever paid any money for his deed? A. Not to my knowledge.

"Q. You know as a fact that he never did pay for his deed, don't you? A. He never paid anything that I know of. . . .

"Q. Was it discussed in your presence between your mother and Mr. Schnieder as to what she could do under this will with this property? A. Yes, she asked him while I was there if she could dispose of this property and he said she could do as she saw fit.

"Q. Mr. Schnieder told her that? A. Yes, sir.

"Q. Was your brother with you at this time? A. Well, he went with us there, but I think he left to go to Mr. Sidenfaden's.

"Q. You and your brother accompanied your mother to Mr. Schnieder's office? A. Yes, sir.

"Q. Did anybody else go with your brother and mother? A. No, sir."

This witness also added that the only payment made by her was the surrender to her mother of a note given to her husband by her father for $300, and which had been many years overdue previous to her father's death.

The defendant, John Kaiser, on cross-examination as to the making of the deed to him and the visit to the office of Mr. Schnieder stated:

"Q. Your mother and Mrs. Fitzpatrick went to Mr. Schnieder's office? A. Yes, and he read it to us.

"Q. You read in the will—heard read that it was your father's wish that the remainder of this property, after his death, was to be equally divided among his children? A. She could dispose of it as she saw fit for her maintenance and support.

"Q. Is that so? A. Yes, sir; that is the way I understood it anyway.

Tallent v. Fitzpatrick and Kaiser.

"Q. Was there anything to the effect that she could give it away? A. She could give it away if she wanted to; that is the way I understood it. . . .

"Q. You say these deeds were executed on the 30th? A. Yes, sir.

"Q. Three days after the will was filed she gave you and your sister the entire property? A. I think it was the 30th; I think it was that date.

"Q. You or your sister neither one paid a dollar to your mother for those deeds, at this time? A. No, sir.

"Q. You say you don't know what the value of the property was at the time? A. I don't know what it was then or now.

"Q. Haven't any idea? A. No, sir.

"Q. Why was $1000 written in the deed as a consideration? A. Well, I don't know; possibly Mr. Schnieder told her to put that in; I don't know."

He then added that he paid some expenses charged to the property for city improvements against it since his father's death, and that he gave his mother $200 after his death which he supposed she used to pay bills, and that he paid his father's funeral expenses and medical bills amounting to $150. It is evident that these transactions did not in any fair and just sense meet the requirements of a sale of the property which the widow was authorized to make under the will. Her authority was to sell, which implies that she should do so in fact and truth, not by fiction and pretense.

The common law definition of a sale of personal property is "a transfer of the absolute or general property in a thing for a price in money paid or promised." [Benj. on Sales (5 Ed.), p. 2; Stout v. Hardware Co., 131 Mo. App. l. c. 525.] "But if any other consideration than money be given, it is not a sale" though it may be an exchange or barter. "If no valuable consideration be given for the transfer, it is a gift, not a sale." [*Ibid*, p. 3;

Sale:
Definition.

Black's Law Dictionary.] A sale possesses the same elements whether its subject-matter be goods or lands. By the use of the word "to sell" the testator gave his wife only the power implied in performing an act of sale or the transfer of title for a *moneyed* price. He did not thereby clothe her with authority to convey for a different consideration or for no consideration, for neither of these acts would have been a sale according to the fixed meaning of that term. Now the transactions under review in this case, if not mere gifts from the widow to the defendants, certainly rested on no present or promised payment of money, but only upon an alleged satisfaction of some vague and uncertain claims of the grantees against the estate of their deceased father. This was not sufficient to bring the deeds based on such consideration within the scope of the power given the grantor under the will; for that instrument only empowers her to make a real, not a colorable, sale. Not having done this during her life, the remainders to the five children of the testator took effect at her death, and the present suit by one of them to avoid the deeds to defendants was well brought and correctly decided by the trial court. The judgment is affirmed.

*Graves, J.,* concurs; *Lamm* and *Woodson, JJ.,* concur in result for the reason stated in dissenting opinion by LAMM, J., in Griffin v. Nicholas, 224 Mo. l. c. 312.