## PERRY v. PERRY et al.

No. 4264.    Decided January 26, 1926.    Rehearing Denied April 9, 1926.    (245 P. 695.)

1. WITNESSES—GRANTEE'S TESTIMONY AS TO DELIVERY OF DEED IN GRANTOR'S PRESENCE HELD INCOMPETENT IN GRANTEE'S ACTION AGAINST GRANTOR'S ADMINISTRATRIX TO QUIET TITLE (COMP. LAWS 1917, § 7123). Under Comp. Laws 1917, § 7123, grantee's testimony as to delivery of deed in grantor's presence was incompetent in grantee's action against grantor's administratrix to quiet title.

2. WITNESSES—GRANTEE'S TESTIMONY, AS TO ORAL ARRANGEMENT WITH DECEASED OCCUPANT THAT LATTER MIGHT REMAIN ON LAND, HELD INCOMPETENT (COMP. LAWS 1917, § 7123). In action to quiet title, under deed from defendant's intestate and other heirs of former owner, plaintiff's testimony as to oral arrangement with intestate, who occupied land as home until his death and made permanent improvements, that he might occupy premises in consideration of paying taxes until plaintiff demanded them, *held* incompetent under Comp. Laws 1917, § 7123.

3. DEEDS. In action to quiet title, finding that deed to plaintiff was never delivered *held* sustained by evidence.

4. EXECUTORS AND ADMINISTRATORS—INVENTORY OF PROPERTY AS DECEDENT'S HELD NOT TO DIVEST GRANTEES OF TITLE OR RIGHT OF POSSESSION. That tracts conveyed by decedent before his death and occupied by grantees were inventoried as his property, by mistake or intentionally, did not make them such nor divest grantees of title or right of possession, though record title was in his name.

5. EVIDENCE—DEED, OVER 30 YEARS OLD, FROM PROPER CUSTODY OF ONE NATURALLY IN POSSESSION OF AND EXERCISING RIGHTS UNDER IT, PROVES ITSELF. Deed, more than 30 years old, is ancient document, and, where shown to have come from proper custody of one naturally in possession of and exercising rights under it, proves itself, without other evidence of delivery or genuineness.

Corpus Juris-Cyc. References:

[1, 2]    Evidence 23 C. J. p. 38 n. 27; p. 40 n. 60: Witnesses 40 Cyc. p. 2313 n. 3; p. 2577 n. 73; p. 2584 n. 34; p. 2653 n. 90.

[3, 4]    Deeds 18 C. J. p. 438 n. 62: Executors and Administrators 23 C. J. p. 1167 n. 75.

[5]    Evidence 22 C. J. p. 945 n. 66.

[6]    Adverse Possession 2 C. J. p. 276 n. 59.

[7]    Adverse Possession 2 C. J. p. 204 n. 10.

6. ADVERSE POSSESSION.   Evidence in action to quiet title *held* to show title by adverse possession in defendant's intestate and his heirs.

7. ADVERSE POSSESSION—EVIDENCE OF OPEN, CONTINUOUS, AND EXCLUSIVE POSSESSION FOR OVER 30 YEARS UNDER CLAIM OF RIGHT, THOUGH WITHOUT PAYING TAXES, HELD SUFFICIENT AS AGAINST ONE CLAIMING UNDER UNDELIVERED DEED AND NEVER IN POSSESSION OR CLAIMING INTEREST UNTIL COMMENCEMENT OF SUIT TO QUIET TITLE.   Evidence of open, continuous, and exclusive possession for more than 30 years under claim of right, though without paying taxes, *held* to show better title and right of possession than one claiming under deed never delivered and never in possession of or exercising ownership over tract nor claiming interest in it before commencing action to quiet title.

Appeal from District Court, Fifth District, Iron County; *Thos. H. Burton*, Judge.

Action by Heber C. Perry against Ellen D. N. Perry, administratrix of the estate of Thomas W. Perry, deceased, and others, to quiet title.   From judgment dismissing complaint and quieting title in defendants on cross-complaint, plaintiff appeals.

AFFIRMED.

*O. A. Murdock*, of Beaver, for appellant.

*George B. Hancock*, of Cedar City, for respondents.

STRAUP, J.

The plaintiff brought this action to quiet title in him to a parcel of land in Cedar City, Utah.  The land is a part of a block originally owned by George Perry, the father of plaintiff Heber C. Perry and Thomas W. Perry, deceased, the administratrix of whose estate and his heirs are the defendants.  In 1890, George Perry, the father, by warranty deed conveyed the north portion of the block to Thomas W. Perry, and at about the same time the south portion to

Heber C. Perry. The situation may be illustrated by the following drawing:

The exterior lines represent the block, which is about 33½ rods east and west and about 23⅓ rods north and south. The part marked "A" is the portion which was conveyed to Thomas W. Perry. The part marked "B" is the portion conveyed to the plaintiff. Neither of the portions C or D was conveyed to either Heber C. or Thomas W. Perry by their father, George Perry. The plaintiff seeks to recover from the defendants the portions of tracts A and C.

After the conveyance to him in 1890, and about 33 years prior to the commencement of this action, Thomas W. Perry entered into possession of tract A, and at all times thereafter continuously and until his death in November, 1922, occupied and possessed it, and thereafter up to the commencement of this action it was occupied and possessed, and continued to be occupied and possessed, by his widow and heirs, the defendants herein. About the same time the plaintiff entered into possession of parcel or tract B, and from thence on until the commencement of this action continued to occupy and possess it. In the early 90's, Thomas W. Perry, on tract A, built a substantial seven or eight roomed brick house, which,

until his death, was occupied by him and his family as his residence, a barn, and other outbuildings, planted fruit trees and shrubbery, and used other portions of the tract for a yard and garden. The plaintiff likewise built a house on parcel B and otherwise improved it and occupied it as his home, as did Thomas W. Perry tract A as his home. Thomas W. Perry, from 1890 until his death, and thereafter, and up to the commencement of this action, his heirs, paid all the taxes assessed and levied on tract A. In connection with tract A, Thomas W. Perry from the early 90's until his death, and thereafter his widow and heirs, also occupied and possessed tract C as did the plaintiff during all of such time occupy and possess tract D in connection with tract B. Both parcels C and D, are spoken of as "dry lots," being nonirrigable by gravity flow, and were not, at least not in the early days, regarded as of any particular value. Tract C was chiefly used by Thomas W. Perry as a stack yard and for other similar purposes. That the possession of both tracts A and C from about 1890 until the commencement of this action by Thomas W. Perry and his heirs was open, exclusive, and continuous is shown beyond dispute; and that it was under claim of right and adverse to the plaintiff and to the whole world, and that plaintiff, until shortly before the commencement of the action, had made no claim to or asserted any right, title, or interest in any part of either tract A or tract C, is shown by the great weight of the evidence.

George Perry died in 1899. For about nine years prior thereto Thomas W. Perry, as heretofore indicated, had occupied and possessed both tracts A and C, and had made most of the improvements heretofore referred to. Joseph M. Perry and William H. Perry, sons of George Perry and brothers of Thomas W. Perry and Heber C. Perry, were appointed administrators of the estate of George Perry, deceased. He left surviving him eight heirs, including the plaintiff and Thomas W. Perry, and at his death was the owner of numerous separate parcels of lands in and near Cedar City and in the county. These, in the course of the

administration of his estate, were distributed to his heirs, each given an undivided one-eighth interest therein. For some reason, defendants allege through mistake, tracts A and B theretofore conveyed by George Perry to Thomas W. Perry and Heber C. Perry (the deeds of neither of which conveyances had then been recorded), as well as tracts C and D, were inventoried in the estate of George Perry, deceased, and as property belonging to him at the time of his death, and likewise were distributed to the eight heirs, giving to each an undivided one-eighth interest therein. In January, 1903, the heirs met, including Thomas W. and Heber C. Perry, when they conveyed to each other their respective undivided interests in and to the various parcels so as to give each heir a complete ownership in one or more parcels. Among such conveyances, the heirs, including Thomas W. Perry, signed a deed purporting to convey to appellant the whole of the block made up of tracts A, B, C, and D, not so designated in the deed, but in which the whole block is described by courses in chains and links. That deed, when so signed by the heirs and acknowledged by them, was turned over to Joseph M. Perry, then one of the administrators of the estate of George Perry, deceased. It remained in his possession until his death, about 1915, and then was found among his private papers and thereafter remained in the possession of members of his family until in September, 1921, a period of about 18 years after it was signed and turned over to Joseph M. Perry. In 1921 Heber C. Perry and Thomas W. Perry had some litigation between them over other lands, in which litigation Heber C. Perry was defeated. At the conclusion of such litigation, Heber C. called on one of the sons of Joseph M. and asked for the deed, saying, according to the testimony of several witnesses, that he desired it to take to an abstractor to get a description. The son hesitated to let Heber C. take the deed, but, on his promise that he would return it, let him have it. Heber C. immediately put the deed on record and thereafter kept it. It is in virtue of that deed that the plaintiff asserts

title to the whole of the block, including the portions A and C occupied and possessed by Thomas W. Perry and his heirs for about 33 years prior to the commencement of this action.

On January 3, 1922, Thomas W. Perry put on record his deed of 1890 from George Perry to tract A, and Heber C. Perry, on January 19, 1922, put on record his deed of 1890 from George Perry to tract B.

On findings and by decree the court dismissed plaintiff's complaint, and as against the plaintiff quieted the title in the defendants on their cross-complaint to tracts A and C. The plaintiff appeals.

Among other things, the court found that the deed of 1903, signed by the heirs and purporting to convey the block to plaintiff, never was delivered. The evidence respecting its delivery and the purpose of its signing is meager. That at the time of its signing it was turned over to and left with Joseph M. Perry, one of the then administrators of the estate of George Perry, deceased, and that it remained with him until his death in about 1915, and from thence on with members of his family until 1921, is not disputed. The plaintiff testified that when he in 1921 (about seven years after Joseph M. Perry's death) called on one of the sons of Joseph M. Perry and asked for the deed, the son replied that, "Tom (Thomas Perry) has been down to see about the deed, and I don't know whether I had better give it up or not." And that when the son got the deed out of the safe he told plaintiff, "You can't take this deed; Tom has been chasing this deed up and wanted it destroyed," and when plaintiff asked what "Tom" had to do with it, the son replied that "Tom said it was his property," to which the plaintiff replied, "Well, I guess not," and that then the deed was handed over to him. He testified that he said nothing about not recording the deed or bringing it back. But several witnesses testified that he then said he wanted the deed only to get a description, that he would not record it, and that he would return it. The plaintiff, however, does not claim that getting the

deed from the son constituted the delivery of it. He testified that when the deed was signed and acknowledged the notary handed it to him, and that he then gave it to Joseph M. Perry to keep it for him until he called for it, and that such transaction constituted the delivery. But the circumstances point against any such claim and are in conflict with the acts and conduct of the parties. Further, the record shows, the plaintiff testified to it, that when the deed was signed and acknowledged Thomas W. Perry was present, and that he deceased several years before the trial. The action, as is seen, is one between the plaintiff and the administratrix of the estate of Thomas W. Perry deceased and his heirs. The testimony so given by the plaintiff thus related to a transaction had with such deceased person and to a matter of fact equally within the knowledge of both plaintiff and the deceased, and, under Comp. Laws Utah 1917, § 7123, was incompetent. With such testimony excluded there is no evidence of any such claimed delivery. Though such testimony remained in, still, coming as it does from an interested and hostile witness against a dead man, it may well be regarded with suspicion, and when considered in connection with the acts and conduct of the parties as of little weight. The plaintiff admitted that since 1890 Thomas W. Perry up to his death was, and that his heirs since then were, in the open, continuous, and exclusive possession of both tracts A and C, and that he had made permanent and lasting improvements thereon and occupied them as their home; that during all that time Thomas W. Perry and his heirs paid the taxes on tract A, upon which the valuable improvements were made; and that not until 1921 did plaintiff make or assert any claim, right, title, or interest in or to either of the tracts A or C. In explanation of that, the plaintiff testified that he had an oral arrangement or agreement with Thomas W. Perry, whereby Thomas W. Perry, in consideration of the payment of the taxes, was permitted by the plaintiff to occupy the house (admittedly built by the deceased) and to

enjoy the premises until the plaintiff demanded them, but that he had made no such demand until several years after the death of Thomas W. Perry. Again, such testimony as to such an arrangement, under section 7123, supra, also was incompetent, and on that ground was stricken by the court, and on the face of it, and in view of the acts and conduct of the parties, the testimony was so highly improbable as to be of no real substantial value.

We think, on the record, the court properly found that the deed signed by the heirs purporting to convey the block to the plaintiff never was delivered, and that it had no force or effect. True, in the estate of George Perry deceased, the block was inventoried as his property and as such, in connection with other property, was distributed in equal parts to all of the heirs, notwithstanding the greater part of it (A to Thomas W. and B to the plaintiff) was, by warranty deeds duly signed and acknowledged by George Perry, conveyed about nine years before his death, and during all such time the respective tracts were occupied, possessed, and improved by Thomas W. and Heber C. Perry as was also tract C occupied by Thomas W. Perry, and tract D by the plaintiff. In view of such conveyances, why the whole of the block was inventoried as the property of George Perry, deceased, is averred by the defendants, but is not shown by any direct evidence. The whole matter rests on inferences. Neither of such deeds was on record at the time. The record title, therefore, to the whole of the block, then stood in the name of George Perry. That may account for its having been inventoried as his property. But the fact that he, nine years prior thereto, had conveyed A to Thomas W. Perry and B to the plaintiff, and that each entered into possession of their respective tracts and occupied them, is undisputed. Thus, it indisputably being shown that George Perry at his death was not the owner of either tract A or tract B, though they by mistake or intentionally were inventoried as the property of George Perry, did not make them such or divest either Thomas W.

Perry or the plaintiff of title or right of possession to their respective tracts.

It somewhat faintly is urged that there was not sufficient evidence to show the delivery of genuineness of the deed from George Perry to Thomas W. Perry. The deed was ancient, more than 30 years. It was what is called an "ancient document." It was shown to come from proper custody from him who by reason of his connection with the property in question, naturally might have possession of it and who exercised rights under it. It thus proved itself. 1 *Elliott Ev. Ch.* 19.

However, aside from all other considerations, it, by the clear and manifest weight of the evidence, was shown that Thomas W. Perry and his heirs as to tract A, by adverse possession acquired indisputable title and right of possession thereto as against the plaintiff and the whole world.

As to tract C, the record is not so clear because of nonpayment of taxes by Thomas W. Perry and his heirs. Still, as against the plaintiff, their title and right of possession to tract C was better than that of plaintiff. As already seen, the plaintiff got no title to the block or to any portion thereof by virtue of the deed of the heirs in 1903 because of a nondelivery of it. Nor was tract C otherwise ever conveyed to him by anyone. He never was in possession of it and at no time exercised any ownership over it, nor, until shortly before the commencement of the action, did he claim any interest in it. On the contrary, it is indisputably shown that under claim of right Thomas W. Perry and his heirs from 1890 and up to the commencement of this action were in the open, continuous, and exclusive possession of tract C, as well as of tract A, and claimed it against the planitiff and the whole world. The only element lacking of an indisputable title thereto by adverse possession was the payment of taxes by them as to tract C. But such possession was evidence of good title as against one who showed no better title.

We are therefore of the opinion that the judgment of the court below should be affirmed, with costs. Such is the order.

GIDEON, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.