WALTER H. GRAHAM, an Infant, by his Guardian and Curator, WALTER H. GRAHAM, v. OSCAR STROH, WILLIAM STROH, HENRY STROH and HELEN STROH, his wife, and OSCAR STROH, Executor of the Estate of ANNIE STROH, Appellants.—117 S. W. (2d) 258.

Division One, May 26, 1938.*

---

*NOTE: Opinion filed at September Term, 1937, April 1, 1938; motion for rehearing filed; motion overruled at May Term, 1938, May 26, 1938.

*Lashly, Lashly & Miller and Jacob M.* and *Arthur V. Lashly* for appellants.

*Shepard R. Evans* and *Malcolm I. Frank,* for respondents; *William M. Fitch* of counsel.

BRADLEY, C.—This cause is in equity and the first count of the petition asks that certain real estate conveyances be set aside and to have the property conveyed thereby to be adjudged to be the property of plaintiff and defendants as tenants in common, and that partition be had. The second count asks for an accounting from defendants as to money, stocks, bonds and securities alleged to have been received by them from Annie Stroh, deceased, and for partition of the personal property, and that defendant, Oscar Stroh, executor of the estate of Annie Stroh, be enjoined from further administering said estate. The trial court found for plaintiff on both counts of the petition, ordered partition, appointed a receiver, and appointed special commissioner to sell, in the event partition in kind could not be made. Motions for a new trial were overruled and defendants appealed.

Plaintiff is the grandson of William and Annie Stroh. William died in St. Louis, June 8, 1894, and Annie, his widow, died in St. Louis, December 23, 1933. William and Annie had four children, Clara, and defendants, Oscar, William and Henry. Defendant Helen Stroh is the wife of Henry. Clara married Walter H. Graham, and died September 22, 1923, leaving her husband and her infant son, who is plaintiff.

William Stroh, the father, died testate. His will disposed of his property as follows:

"1st. I give, bequeath and devise all of my estate and property, whether real, personal or mixed, and wheresoever situate unto my wife, Annie Stroh, for and during the time she shall remain my widow: giving and granting unto her, however, full right and power whenever for any cause she may deem it wise, necessary or expedient, to sell and convey or exchange the same or any part thereof, and to reinvest the proceeds of sale, in such manner and in such property as she may think best. I also give and grant unto her full power and authority to lease the real estate or any part thereof, to such tenant or tenants, upon such terms and conditions and for such periods of time as she may desire. I also give and grant unto her full power and authority to encumber my property, or any part of it, by mortgage

or deed of trust, if and whenever in her judgment and discretion, it becomes necessary to do so. All this I do, having full confidence in my wife and being satisfied that she will not disregard the interests of my children.

"2nd: Should my wife remarry, or in the event of her death should she remain my widow, I give, bequeath and devise all of my said estate then yet remaining, or its substitute, should my wife have availed herself of the powers herein given her, unto my children Clara, Henry, William and Oscar, and any other child or children, should any be born to us hereafter, in equal shares, share and share alike, absolutely and forever."

The widow, Annie Stroh, was named executor in the will, and was to act without bond.

Annie Stroh did not remarry. She died testate and by her will she devised to her son, Oscar, any interest she had in the home at 4502 Tower Grove Place, together with what interest she had in the contents. To her grandson, plaintiff herein, she bequeathed $5000 worth of securities, and appointed Oscar to administer (without bond) the grandson's share and to see that the principal was not turned over until he became of age. The residue was bequeathed equally to Oscar, William and Henry.

Annie Stroh, widow of William, as executrix under his will, filed an inventory aggregating $53,519.45. At the time of his death William Stroh owned a substantial interest in a wholesale millinery company, a copartnership, known as Gaier & Stroh Company. June 16, 1894, eight days after Stroh's death, this company was incorporated under the name of Gaier & Stroh Millinery Company, with a capital of $110,000, divided into 1100 shares of the par value of $100 each. Of these shares 300 were issued to Annie Stroh, 50 each to Eugene R. Stroh and Louis Blase. In the inventory of her husband's estate, Annie Stroh listed as assets the 300 shares issued to her, par value, $30,000, two notes for $5000 each, dated June 19, 1894, payable to her, and due on or before 7 years from date, and given separately by Eugene R. Stroh and Louis Blase. Also, she listed as an asset of the estate a note dated June 20, 1894, for $12,426.45, given by the millinery corporation, payable to her, and due 3 months after date. The millinery corporation stock and the notes amounted to $52,426.45. Other items, not necessary to name, went to make up the total of the $53,519.45. The two $5000 notes resulted from an agreement between William Stroh, before his death, and Louis Blase and Eugene R. Stroh, whereby William had sold to Blase and Eugene R. Stroh a $5000 interest each in the millinery copartnership. The $12,426.45, as we infer, was the remainder of the William Stroh interest in the copartnership after deducting $40,000 for the 400 shares, issued to Mrs. Stroh, Louis Blase and Eugene R. Stroh. All the notes were

paid to Mrs. Stroh, and the $12,426.45 note was paid between the time of filing inventory and the first annual settlement, and in this settlement the executrix credited herself with the amount of this note as "cash retained on a/c of legacy." In the final settlement filed September 30, 1896, the executrix credited herself "by amount paid Annie Stroh, sole devisee," $40,323.39. This credit was for the 300 shares of stock issued to her in the millinery corporation, and the Louis Blase and Eugene R. Stroh notes. Other credits were taken showing balance between charges and credits.

Oscar Stroh as executor under his mother's will filed inventory of her estate January 26, 1934, showing assets of $3843.

Plaintiff alleged that Annie Stroh, during her life, sold all the property received by her under her husband's will and invested the proceeds in stocks, bonds, securities and real estate. And it appears in the record that in 1927 and 1931, Annie Stroh conveyed certain real estate to her sons, Oscar, Henry and William. The consideration in each conveyance was nominal. The home at 4502 Tower Grove Place was conveyed by Mrs. Stroh to a third party and this party immediately conveyed back to Mrs. Stroh and Oscar jointly. The conveyances to Henry and William were direct. The trial court found that each of the parcels of real estate conveyed to Oscar, Henry and William were "part and parcel of the estate of William Stroh." This finding was based on the construction that the will of William Stroh devised only a life estate in Annie Stroh, his widow, and that the real estate mentioned was purchased by her from proceeds of her husband's estate, and that the title was in plaintiff, Oscar, Henry and William as tenants in common.

The court further found that certain cash, stocks, bonds and securities held by Oscar Stroh were derived from the proceeds of the estate of William Stroh, deceased, and belonged to that estate, that is, to Oscar, Henry and William, and plaintiff. Clara was married July 19, 1919, and her mother gave her $5000 in securities as a wedding present. And the court found that the $5000 in securities was derived from the proceeds of the estate of William Stroh, deceased, and decreed that the interest of plaintiff be charged with this $5000.

The cash, stocks, bonds and securities found to have been derived from the estate of William Stroh, and to be the property of Oscar, Henry, William and plaintiff, are: 100 shares of Century Electric Company common stock, $100 par value; 8 bonds, $500 each of the Scullin Steel Company; $8000 in bonds of the St. Louis Car Company; 75 shares of Wabash Telephone Securities Company, preferred (now known as Telephone Bond & Share Company); one $500 bond, Falstaff Brewing Corporation; $2500 in cash, held by Oscar Stroh and received from the sale of 5 Falstaff Brewing Corporation bonds, par value, $500 each; $3000, par value, bonds Carson Timber Lands

(now known as Madison Iron County Land Company); $4500, par value, Commodore Apartment Bonds; $3000, par value, Mississippi Apartment bonds (now known as Missan Corporation bonds); $1000, par value, Walpert Building bonds (now known as Linside Apartment Company bonds); $3500, par value, For Lin Realty Company bonds; $2500, par value, Chouteau Apartment bonds; 6 shares of stock in Missan Corporation; 2 shares of stock in Linside Corporation; 5 shares Chouteau Apartments Corporation.

And the court found that all these bonds, stocks, etc., were in the name of and in the possession of Oscar Stroh. Also, it was found that the will of Annie Stroh was void in so far as devising to Oscar any interest in the home at 4502 Tower Grove Place; and that this will was void so far as, bequeathing, by the residuary clause, to Oscar, William and Henry, the stocks, bonds, etc., above mentioned.

As we view the situation, there are two principal questions, viz.: Did Annie Stroh take a life estate or a fee under her husband's will? and if she took a life estate only, Does the record supporting the finding that the real and personal property involved was derived from the estate of the testator, William Stroh? If the property involved was derived from the estate, and Annie Stroh, by the will of her husband, took a fee, then whatever she did with the property or proceeds thereof would be of no legal concern to plaintiff. And if the property was not derived from the estate it would still be of no legal concern to plaintiff as to what disposition was made.

As appears, supra, by the first clause of the will, the testator devised all his property, real, personal or mixed, to his wife "for and during the time she shall remain my widow," and she remained his widow. She was given full right and power to sell, exchange and encumber. The testator recited in the will: "All this I do having full confidence in my wife and being satisfied that she will not disregard the interest of my children."

For convenience we here again set out the second clause of the will: "Should my wife remarry, or in the event of her death should she remain my widow, I give, bequeath and devise all of my said estate then yet remaining, or its substitute, should my wife have availed herself of the powers herein given her, unto my children Henry, William and Oscar, and any other child or children, should any be born to us hereafter, in equal shares, share and share alike, absolutely and forever."

Plaintiff contends that Annie Stroh, under the will of her husband, took a life estate with the power to sell, exchange and encumber, and that the remainder went to the four children. We do not think there is room for controversy on this point. We find no ambiguity in the will, and to us it seems clear that the testator intended, as plaintiff contends, and the testator's intention should prevail.

[Payne et al. v. Reece, 297 Mo. 54, 247 S. W. 1006; Tillerson et al. v. Taylor, 282 Mo. 204, 220 S. W. 950; Armor v. Frey, 226 Mo. 646, 1. c. 667, 126 S. W. 483; Coleman v. Haworth, 320 Mo. 852, 8 S. W. (2d) 931; Scott v. Fulkerson, 332 Mo. 734, 60 S. W. (2d) 34, 1. c. 36; Gibson v. Gibson, 239 Mo. 490, 144 S. W. 770.]

The power given the life tenant to dispose of the fee, to exchange and to encumber for the benefit of the life tenant, was not repugnant to the life estate or the remainder over. [Grace v. Perry, 197 Mo. 550, 95 S. W. 875; Garland v. Smith, 164 Mo. 1, 1. c. 16, 64 S. W. 188; Mauthe et al. v. Breckenridge et al., 219 Mo. App. 694, 284 S. W. 145, 1. c. 149.]

The law that the power given a life tenant to dispose of the fee, to reinvest, to exchange and to encumber, all for the benefit of the life tenant, is not repugnant to the life estate nor the remainder over, is so well settled we do not think it necessary to review cases. And it is equally as well settled that a life tenant, given the power to sell, to reinvest, to exchange, and to encumber, all for the benefit of the life tenant, cannot convey the fee by gift. [Burnett v. Burnett, 244 Mo. 491, 148 S. W. 872; Tallent v. Fitzpatrick, 253 Mo. 10, 161 S. W. 689; Cook v. Higgins, 290 Mo. 402, 235 S. W. 807, 1. c. 810; Citizens Bank of Lancaster v. Foglesong, 326 Mo. 581, 31 S. W. (2d) 778; Presbyterian Orphanage of Missouri et al. v. Fitterling et al., 342 Mo. 299, 114 S. W. (2d) 1004, handed down concurrently herewith.]

We think it clear from the will of William Stroh, deceased, that he intended for his wife, Annie, to have and enjoy the property devised to her for her natural life or during the time she remained his widow, and that for her benefit, she could sell, reinvest, exchange or encumber; and that upon her remarriage or death, whatever of the property remained from the original or from reinvestment, or exchange, or purchased from the proceeds of sale, would go to his children. Such was the construction of the trial court. Defendants argue that the last sentence in the first clause of the will should be construed to mean that the testator appreciated that he was devising an absolute fee to his wife, and that he was willing to risk her as to what the children would ultimately receive from his estate. All the children were quite young when the will was executed (May 8, 1890), and the testator, no doubt, appreciated that their upbringing and welfare, should he die while they were young, would depend upon their mother, and for that he was trusting in her. But we do not think that this sentence in anywise obscures the clear intention of the testator.

On the question as to whether or not the evidence supports the finding of the court that the real and personal property involved was derived from the estate of the testator, William Stroh, we do

not think it necessary to set out the evidence at length. Plaintiff called as witnesses Oscar, Henry and William Stroh, and brokers, real estate agents, trust company officers, etc. Also, plaintiff used Louis Blase, who was a member of the millinery copartnership of Gaier & Stroh Company, during the lifetime of William Stroh, deceased. The record shows that Annie Stroh did not have any money or property of consequence from any source, except from the property her husband owned at the time of his death. It would appear that the partnership estate of William Stroh in the Gaier & Stroh Company was not administered in the probate court. However, Annie Stroh, executrix under the will of her husband, inventoried, as the property of the estate, the stock and the $12,426.45 note she received from the Gaier & Stroh Millinery Company, the corporation that was formed 8 days after the death of William Stroh. Also, she inventoried, as the property of the estate, the two $5000 notes given separately by Louis Blase and Eugene R. Stroh for the stock they each received in the corporation. The total inventory was $53,519.45, and of this, 52,426.45 must have come from the interest of the testator in the millinery copartnership.

Defendants contend that the testator did not, at the time of his death, own the 300 shares of stock in the millinery corporation, the $12,426.35 note and the two $5000 notes, inventoried, hence, they say that none of this property "passed to the surviving widow under the testator's will." It is true, of course, that the testator, at the time of his death, did not have in his possession the stock and the notes, but at the time of his death he *owned* the very property, his interest in the copartnership, that was the sole consideration for the stock and the notes. There is no other possible conclusion under the evidence. And upon the death of the testator, the widow, under the will, became the owner of a life estate, or until she remarried, in the interest the testator had in the copartnership at the time of his death.

Defendants, in their brief, say: "It is of significance to observe that the testator does not specifically mention in his will the shares of stock and notes . . . claimed by respondent as constituting the subject matter of a trust. A logical inference deducible from the failure of the testator to specifically refer to said stock and notes, is that he did not own the aforementioned stock and notes." Of course the testator made no reference in his will to the stock and notes. The stock and notes as such were not in existence at the time testator executed his will, but testator's *interest* in the copartnership, at the time of his death, was in existence, and as stated, was the sole consideration for the stock and the notes.

Defendants say that the fact that the executrix, Annie Stroh, inventoried the stock and notes as the property of the estate is not sufficient to show title in testator at the time of his death. These

696

cases are cited. [Hall v. Dodson (Mo.), 274 S. W. 462; Roberts v. Roberts (Mo.), 291 S. W. 485; In re Abddulah's Estate, 214 Wis. 336, 252 N. W. 158; Henshaw v. Gunter, 169 Tenn. 305, 87 S. W. (2d) 561; Filley v. Murphy, 30 Wash. 1, 70 Pac. 107; In re Sloan's Estate, 254 Pa. 346, 98 Atl. 966; Dodge v. Lunt, 181 Mass. 320, 63 N. E. 891; In re Langenbach's Estate, 201 Wis. 336, 230 N. W. 141; Baker v. Brickell, 87 Cal. 329, 25 Pac. 489; Perry v. Perry et al., 67 Utah, 45, 245 Pac. 695; Rollins v. Rollins (N. H.), 92 Atl. 339.]

The Roberts case held (291 S. W. l. c. 487) that the act of an executrix in inventorying property, as the property of her husband's estate, did not estop her from claiming a resulting trust in the property. The Hall case, supra, was cited. The other cases cited hold that an inventory is not conclusive on the question of ownership. Plaintiff, in the present case, does not rely solely on the inventory. As we have pointed out the record shows that Annie Stroh at no time, had any money or property of consequence derived from any source other than what she received under her husband's will. Also, it appears in evidence that when she made the $5000 gift to her daughter, she, according to the evidence of Walter H. Graham, plaintiff's father, said: ''Clara, here is a wedding present for you, $5,000 in bonds, everything I have came from, I inherited from your father. You may as well have them now for eventually all of you children will get it anyhow.'' Objection was made to this evidence on the ground that it was ''a statement of a deceased person'' and was self-serving. ''Where a person makes a statement which is opposed to his own interest, an inference arises that such statement would not have been made unless it had been true, and evidence of such statement is for that reason received.'' [22 C. J., sec. 209, p. 231. See, also, Linderman v. Carmin, 255 Mo. 62, 164 S. W. 614; Cape County Sav. Bank v. Wilson, 225 Mo. App. 14, 34 S. W. (2d) 981.] Clearly, the statement of Mrs. Stroh was against the theory that she had any property of consequence, except as derived from her husband's estate, and is in accord as to source and ownership with the inventory she made twenty-five years before she made the statement.

The record shows that for the most part the securities held by Mrs. Stroh were payable to bearer, and that for some time before the death of Mrs. Stroh, Oscar had some part in the management of her affairs; that he had access to her safety deposit box. He said he did not open the box but a few times, but the records kept by the Mercantile Commerce Bank & Trust Company, where the box was, and where Mrs. Stroh had a safety box since June 25, 1894, showed that Oscar visited the box as follows: 12 times in 1926; 12 in 1927; 16 in 1928; 12 in 1929; 9 in 1930; 12 in 1931; 18 in 1932; 32 in 1933.

By the judgment of the trial court, Oscar Stroh individually and as executor of his mother's estate, was directed to render an account-

ing to the receiver. It also appears from the judgment that the trial court retained "jurisdiction of this cause for the purpose of making and entering such further orders and decrees, as from time to time may be deemed necessary and proper to execute and make effective the terms and provisions of this decree."

The judgment should be affirmed and it is so ordered, and the cause is remanded for such orders as may be found necessary to carry out and make the decree effective. *Ferguson and Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Douglas, J.,* absent.