Henry W. SOHOSKY et al., Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 72–1195.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1972.

Decided Feb. 14, 1973.

---

Richard Halberstein, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before GIBSON and LAY, Circuit Judges, and DURFEE,* Court of Claims Judge.

GIBSON, Circuit Judge.

Appellants appeal an adverse decision of the United States Tax Court reported at 57 T.C. 403.

The appellants (taxpayers) had sought to amortize a life estate *per autre vie* in certain corporate stocks as a wasting asset. The Commissioner found tax deficiencies in the amount of the deduction and that determination was found to be correct by the Tax Court in an opinion authored by the Honorable Bruce M. Forrester.

Taxpayers'[1] father, John Sohosky, Sr., died testate in 1963. At the time of his death he owned 1498 of the 1500 outstanding shares of The Lewis Motor Supply Company. The stock passed to his wife, Eva, for life with power of disposal in the residuary clause of the will, which read as follows:

> "I give and bequeath all of the rest, residue and remainder of my estate, whether real, personal or mixed and wherever it may be situated to my wife, Eva Sohosky, for and during her life, with full power to sell or dispose of all or any part thereof as she may see fit during her lifetime. After her death, or if she should die first or concurrently with me, all of my estate, or all that may remain of my said estate, whether real, personal or mixed or [sic] wherever it may be situated, shall be divided equally among my four children, John J. Sohosky, Jr., Louis O. Sohosky, Henry W. Sohosky and Laura Virginia Emrich, per stirpes and not per capita."

L. Thomas Elliston, Webb City, Mo., for appellants.

* Judge of the Court of Claims sitting by designation.

1. The wives of John and Henry Sohosky are nominally parties to this action as they filed joint returns with their husbands in the years in issue. Since their interest in the suit is passive we will use the term taxpayers to refer to the husbands, the active participants in the transaction.

On April 1, 1965, the following agreement was made between Eva Sohosky as seller, and taxpayers, John, Jr. and Henry Sohosky, two of the three sons of Eva and John Sohosky, Sr., as buyers:

"Eva Sohosky, the Seller, does hereby sell, set over, transfer and convey unto the Buyers above named her life estate and her power of disposal in all of the shares of common stock of the Lewis Motor Supply Company and agrees to transfer said stock to the Buyers by endorsement and transfer of all stock certificates now registered in her name."

However, on May 14, 1966, the same parties entered into a second agreement which provided in pertinent part:

"Now Therefore it is agreed between the parties hereto as follows, to-wit:

"1. That the contract above described dated April 1st, 1965 be and is hereby cancelled and terminated and in lieu thereof the parties have now entered into the following agreements.

"2. The Seller agrees to sell and the Buyers agree to buy 1494 shares of the common stock of the Lewis Motor Supply Company * * *.

* * * * * *

"4. Seller's previous transfer and endorsement of the stock certificates previously held by her are hereby ratified and confirmed and the parties agree that the Buyers are the unconditional owners of said stock without restriction of any kind.

"5. All other obligations or conditions contained in the original contract are hereby terminated, cancelled and rescinded by this agreement."

The Commissioner contends and the Tax Court found that by the bequest in the will of John Sohosky, Sr., Eva had received a life estate in the stock coupled with the power to sell and convey full title to the stock. The Tax Court further found that by the instrument dated May 14, 1966, Eva had transferred absolute ownership of the stock to the taxpayers. On appeal taxpayers contend that (1) the contract did not transfer absolute ownership to them; (2) a life tenant under Missouri law may not transfer absolute ownership of the property; and (3) that if a life tenant has such power, the property may not be sold for less than a full and adequate consideration.

The Government concedes that if taxpayers received only a life estate in the transaction they would be entitled to the deduction.[2]

■ As to the first argument, the phrase in the May 14, 1966 contract that "the parties agree that the buyers are the unconditional owners of [the] stock without restriction of any kind" is unequivocal in granting absolute ownership of the stock. Taxpayers argue that the reference to the sale of the life estate in the contract of April 1, 1965, shows an intent to sell only a life interest. This argument fails to give effect to the clause in the later contract which provided that the contract of April 1, 1965, was "cancelled and terminated" and that the May 14, 1966 agreement was to be in lieu of the earlier contract. The parties are bound by the clear provisions of the written contract of May 14, 1966, as to the interest conveyed by that instrument. The Tax Court did not err in finding that the contract purported to transfer absolute title to the stock to the taxpayers.

Having determined this threshold issue, we must proceed to the second point raised, that Eva did not have the power under Missouri law to transfer absolute title to the stock and to thus destroy the remainder interest.

■■ Missouri has recognized that a grant of a power to a life tenant to dispose of the fee is not repugnant to either the life estate or the remainder interest. Graham v. Stroh, 342 Mo. 686, 117 S.W.2d 258, 261 (1938). The life tenant can convey a larger interest than

---

2. *See,* Rev.Rul. 62–132.

he possesses himself where "there are words clearly indicating that [the] larger power was intended." Gaven v. Allen, 100 Mo. 293, 13 S.W. 501, 502 (1890). Accord, Geyer v. Bookwalter, 193 F.Supp. 57 (W.D.Mo.1961); Graham v. Stroh, *supra*; Schneider v. Kloepple, 270 Mo. 389, 193 S.W. 834 (1917); Priest v. McFarland, 262 Mo. 229, 171 S.W. 62 (1914); Gibson v. Gibson, 239 Mo. 490, 144 S.W. 770 (1912).

Here the fact finder must determine the intent of the testator with regard to the disposal of the property in the will. We recognize, as did the Tax Court, that:

> "By reason of the infinite variety of expression employed in wills, precedents are of less value in their construction than in many other fields of inquiry." Housman v. Lewellen, 362 Mo. 759, 763, 244 S.W.2d 21, 23 (1951).

Here the finder of fact, the Tax Court, found that the testator intended to give Eva power to convey full title to the property in which she had only a life estate. The essence of the decision was expressed thusly by that court:

> "Here, John, Sr., left his residuary estate to Eva—'for and during her life, with *full* power to sell *or* dispose of all or any part thereof *as she may see fit* during her lifetime.' (Emphasis supplied). We believe that the emphasized language reveals John, Sr.'s intent to bestow upon Eva the power to dispose, during her lifetime, of as much of an interest in the elements of his residuary estate as he himself had."

Further support for the interpretation adopted by the Tax Court is found in certain Missouri cases which have inferred an absolute power of disposition to a life tenant where the remainder is composed of *all that remains* of the testator's estate at the death of the life tenant. Threlkeld v. Threlkeld, 238 Mo. 459, 141 S.W. 1121 (1911); Harbison v. James, 90 Mo. 411, 2 S.W. 292 (1886).

Taxpayers contend that Eva's power to dispose of the remainder interest was limited and restricted by Missouri law to a sale of the fee for an adequate consideration, and that the sale amount of $125,000 was insufficient to support a disposition of the entire interest in the stock. The Tax Court decided that Eva could transfer the entire stock for less than an adequate and full consideration. There are Missouri cases on both sides of this issue, the outcome basically depending on varied factual situations and also the wording of the power to sell or dispose. We see no reason to decide that issue as the Tax Court also found that the taxpayers did not prove that the consideration was less than adequate. The factual basis for that finding reads:

> "The total consideration finally agreed upon in the contract of May 14, 1966, was $125,000 ($75,000 represented by a promissory note payable in weekly installments plus $50,000 in respect of the assumption by John, Jr., and Henry of Eva's liability on a note). Certain testimony of John, Jr., and Henry tended to indicate that the entire interest in the stock was worth substantially more than $125,000 on May 14, 1966. Relying on that testimony petitioners calculate a value of $225,000 for the entire interest in the stock. However, John, Jr., as executor of John, Sr.'s estate, declared in the estate tax return that the value of the 1948 [sic] shares in John, Sr.'s estate at John, Sr.'s death was $112,350. In comparing these two bits of evidence we find that we cannot rely upon the self-serving testimony of John, Jr., and Henry to reach the conclusion that the value of the stock may have doubled in the period between John, Sr.'s death in 1963 and the execution of the contract of May 14, 1966."

Our jurisdiction to review decisions of the Tax Court is statutory; we review such decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried

without a jury." 26 U.S.C. § 7482. Rule 52(a), Fed.R.Civ.P. provides that we are not to set aside the findings of fact "unless clearly erroneous." In the instant case we are not "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). The findings of fact in this case are not only not clearly erroneous, but appear consonant with the undisputed facts.

The judgment of the Tax Court is affirmed.